FILED

APR 25 2016

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | BAP No.   CC-15-1211-KuDTa |
| IRISON LOMONT JONES, | Bk. No.   2:13-bk-15206-SK |
| Debtor. | |
| | |
| IRISON LOMONT JONES;<br>ELZA JONES, | |
| Appellants, | |
| v. | **MEMORANDUM**[*] |
| WESLEY H. AVERY, Chapter 7<br>Trustee; KATHY A. DOCKERY,<br>Chapter 13 Trustee; BRETT BOYD<br>CURLEE, | |
| Appellees. | |

Argued and Submitted on March 17, 2016
at Pasadena, California

Filed – April 25, 2016

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Sandra R. Klein, Bankruptcy Judge, Presiding

Appearances:   Jessica Ponce argued for appellants Irison Lomont Jones and Elza Jones; Brett Boyd Curlee argued for appellees Wesley H. Avery, Chapter 7 Trustee, and Brett Boyd Curlee.

Before: KURTZ, DUNN and TAYLOR, Bankruptcy Judges.

---

   [*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

**INTRODUCTION**

The debtor Irison Lomont Jones appeals from a bankruptcy court order dismissing his chapter 13[1] bankruptcy case and imposing restrictions on his future bankruptcy filings. The dismissal order barred Jones from obtaining a discharge of his existing debts in any future bankruptcy case and also barred Jones from filing a new case for three years absent a court order, obtained in advance, permitting the bankruptcy filing.

The dismissal order also imposed the same restrictions on Jones' wife, Elza, who also appeals from the bankruptcy court's dismissal order.

The record supports all aspects of the bankruptcy court's decision against Jones. Over the course of several years, Jones engaged in a pattern of conduct aimed at unfairly manipulating the bankruptcy process in order to prevent his secured creditors from foreclosing on his real property assets, and he did so without any real desire or intent to obtain actual bankruptcy relief. Jones' conduct also was egregious and justified the exceptional restrictions the court imposed against him.

On the other hand, in the process of imposing restrictions against Elza, the bankruptcy court committed both procedural and substantive errors. Elza was not named as a party in the dismissal motion, nor was any relief requested against her in the motion. More importantly, no evidence was offered demonstrating

---

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. All "Civil Rule" references are to the Federal Rules of Civil Procedure.

that she actively participated in Jones' misconduct, and no findings were made supporting the extraordinary bankruptcy restrictions imposed against her.

Accordingly, we REVERSE those portions of the dismissal order barring Elza from discharging her existing debts in future bankruptcy cases and barring her from filing bankruptcy for three years in the absence of a prefiling order permitting such filing. All other aspects of the bankruptcy court's dismissal order are AFFIRMED.

## FACTS

Jones commenced his current bankruptcy case, a chapter 7 case, in February 2013. According to Jones, he commenced the case because of foreclosure proceedings pending against a four-unit apartment building he owned in Culver City, California. This was not Jones' first bankruptcy case. In July 2008, Jones filed a chapter 11 petition, which he voluntarily dismissed a few months later.

Jones also was involved in four other bankruptcy cases filed with the obvious intent to prevent foreclosure of his residence located in Lancaster, California. The secured creditor, Indymac Bank, recorded a notice of trustee's sale in March 2010 scheduling the sale to take place on April 16, 2010. Before that sale could take place, however, Jones proceeded to make a series of transfers of 25% fractional interests in his Lancaster residence to third parties, who then commenced their own bankruptcy cases. These events are more specifically described as follows:

• On April 14, 2010, Jones executed a quitclaim deed, which

3

was recorded on April 15, 2010, transferring a 25% interest in the Lancaster property to his brother, Brett Jones-Theophilious.

- On April 15, 2010, Theophilious commenced a chapter 13 bankruptcy case. In his face-sheet filing, Theophilious identified the address of the Lancaster property as his street address, and the only creditor he included on his mailing list was Indymac.

- On May 7, 2010, the bankruptcy court dismissed Theophilious' bankruptcy case, with an 180-day bar to refiling, because he failed to file any of the required schedules or a statement of financial affairs.

- On May 11, 2010, Jones executed a quitclaim deed, which was recorded on May 14, 2010, transferring a 25% interest in the Lancaster property to Armando Carranza, Jr.

- On May 14, 2010, Carranza commenced a chapter 13 bankruptcy case. In his face-sheet filing, Carranza identified the address of the Lancaster property as his street address, and the only creditor he included on his mailing list was Indymac.

- On June 4, 2010, the bankruptcy court dismissed Carranza's bankruptcy case because he failed to file any of the required schedules or a statement of financial affairs.

- On July 6, 2010, Carranza commenced a second chapter 13 bankruptcy case. In his second petition, Carranza identified the address of the Lancaster property as his street address, and the only creditor he scheduled and included on his mailing list was Indymac.

4

- On July 26, 2010, the bankruptcy court dismissed Carranza's second bankruptcy case because he failed to file all but one of the required schedules, and he also failed to file a statement of financial affairs.
- On August 3, 2010, Jones executed a quitclaim deed, which was recorded on August 19, 2010, transferring a 25% interest in the Lancaster property to Tamisha Mealand Herbert.
- On August 19, 2010, Herbert commenced a chapter 13 bankruptcy case. In her face-sheet filing, Herbert identified the address of the Lancaster property as her street address, and the only creditor she included on her mailing list was Indymac.
- On August 19, 2010, the bankruptcy court dismissed Herbert's bankruptcy case because she failed to file any of the required schedules or a statement of financial affairs.

In contrast, in his own 2013 case, Jones did file bankruptcy schedules, although his first attempt at doing so was less than adequate. For example, Jones did not list any real property on his Schedule A. He did list both his Culver City property and his Lancaster residence on his Schedule C – property claimed as exempt – but he did not identify in his Schedule C any exemption that he actually was claiming.

When Jones eventually filed amended schedules in June 2013, he listed both the Lancaster property and the Culver City property in his amended Schedule A, but Jones included nothing in his schedules to reflect the 25% fractional interests in the Lancaster property he had conveyed in 2010 to Theophilious, Carranza and Herbert, or to reflect that he only held a 25%

5

interest in the Lancaster property as a result of those transfers.

In his amended Schedule B, Jones listed a nonfunctioning Subaru automobile, an Apple boat trailer, a Ford recreational vehicle, a Yamaha all-terrain vehicle, and a Sun Tracker boat. The total aggregrate value he attributed to these items was $13,200. The same personal property transportation assets were listed on Jones' original schedules, with the same aggregate value stated.

The initial § 341(a) first meeting of creditors was held in March 2013. At the initial meeting, the chapter 7 trustee, Wesley Avery, requested that Jones provide additional documents so that Avery could complete his investigation of Jones' assets, and Avery continued the § 341(a) hearing until May 2013. Jones never complied with Avery's document requests, and he corresponded with Avery to tell him that he would not attend the continued § 341(a) hearing, as required by statute. In his correspondence, Jones advised Avery that "[d]ue to my current circumstances, I am no longer seeking chapter 7 bankruptcy protection at this time." But Jones did not take any action in the bankruptcy court to voluntarily dismiss or convert his chapter 7 case. Instead, he filed his amended chapter 7 schedules in June 2013.[2]

---

[2]Around the same time, in May 2013, Avery commenced two adversary proceedings. While the two adversary proceedings did not play a leading role in the bankruptcy court's June 2015 decision to dismiss Jones' bankruptcy case, they did play a supporting role, and they are part of the context in which the
(continued...)

Jones' most notable incidents of debtor misconduct related to Avery's attempts to sell Jones' Lancaster residence. When Avery and his professionals contacted Jones by phone in March 2013 seeking to gain access to the Lancaster property and the Culver City property for a "walk-through," Jones verbally refused and hung up on them.

Later on, in February 2014, the bankruptcy court granted Avery approval to sell the Lancaster property over Jones' objections. Even though Jones had advised Avery in April 2013 that he no longer desired chapter 7 relief, Jones did not file a motion to voluntarily dismiss his chapter 7 case until January 2014, shortly after Avery filed his motion to sell the Lancaster property.

Around the same time, Jones also filed a motion to convert his bankruptcy case to chapter 13 and a motion effectively seeking to have the bankruptcy court reconsider its prior ruling limiting his homestead exemption to his 25% interest in the

---

[2](...continued) bankruptcy court dismissed Jones' case with a bar to discharge and a three-year bar to refiling. In the first (Adv. Dkt. No. 13-01502), Avery sued Theophilious, Carranza and Herbert to avoid and recover the fractional interests in the Lancaster property Jones previously conveyed to them. In the second (Adv. Dkt. No. 13-01559), Avery sued Jones, primarily seeking to deny Jones a discharge, but also seeking to bar Jones from recovering any transfers avoided by Avery in the first adversary proceeding. Subsequently, Avery obtained default judgments against Theophilious, Carranza and Herbert in the first adversary proceeding, and he added claims for relief for waste and conversion of estate property against both Jones and his wife Elza in the second adversary proceeding. The second adversary proceeding was still pending at the time the bankruptcy court dismissed Jones' bankruptcy case.

Lancaster property. According to Jones, because Avery obtained a default judgment avoiding the fractional interests Jones had conveyed to Theophilious, Carranza and Herbert, Jones now was entitled to a homestead exemption for a 100% interest in the Lancaster property. In addition, Jones asserted that the bankruptcy court should deny Avery's motion to sell because of his entitlement to a homestead exemption and because he and his family resided at the Lancaster property and would be left homeless if the property were sold.

The court rejected all of the arguments Jones made in opposition to the sale and entered an order on February 7, 2014 authorizing Avery to sell the Lancaster property to a third party for $535,000. The court further ordered that all of the occupants of the property, including Jones and his spouse, needed to turn over possession of the property to Avery by no later than 5:00 pm on February 24, 2014. Jones filed a notice of appeal from the sale order and sought a stay pending appeal, which the bankruptcy court and this Panel both denied.

In advance of the turnover of possession, on February 19, 2014, Avery's field agent Rommel Agee inspected all of the automobiles and boats located on the Lancaster property. In addition to the personal property transportation assets listed on Jones' Schedule B, Agee found five additional motor vehicles on the property, an additional recreational vehicle, an additional boat, and a "Sea Doo" watercraft.

Agee returned to the Lancaster property on February 24, 2014, at 1:00 p.m., to assist Avery in recovering possession of the residence. According to Agee, all of the motor vehicles

8

formerly on the property had been removed, except for the Ford recreational vehicle. The two boats and the boat trailer also were present. After an unidentified man threatened Agee, Agee parked his car several yards from the property but with a clear view of the property and observed the unidentified man get into a truck and tow away the Sun Tracker boat and the boat trailer at about 3:00 p.m.

At roughly 5:00 p.m., Avery's real estate broker met Agee at the Lancaster property, and they attempted to take possession of the property from Jones and his spouse, but Jones refused, saying that they still were in the process of moving out. Later that same evening, Agee observed Jones loading personal property into the Ford recreational vehicle and driving away. Apparently, Agee made some comment to Jones at that time about him not being authorized to leave with the recreational vehicle, that the vehicle belonged to the bankruptcy trustee. According to Agee, Jones responded that he was taking the recreational vehicle "because he needed a place to live."

At roughly 10:30 p.m. that same night, Agee, Avery's real estate agent, and the purchaser's real estate agent were able to enter into the interior of the property. Upon entering, they discovered that many fixtures had been removed and that the residence had been vandalized. The bankruptcy court summarized the damage to the property in the following manner:

1.  Significant portions of the plumbing had been smashed out and the electrical wiring was substantially compromised;

2.  Concrete was poured down the drains and the plumbing was ripped out;

9

3. The pool filtration system was taken out and concrete was poured down the pipes leading from the pool filtration system to the pool;

4. All the appliances from the indoor kitchen and the outdoor barbeque/wet bar area had been removed and the utility lines to the outdoor barbeque area had been destroyed;

5. The range hood had been ripped out of the ceiling in the kitchen;

6. Parts of the marble counter tops had been smashed out;

7. The ceiling fans had been torn out;

8. The cabinetry was demolished and/or damaged;

9. The sink in the bar area of the kitchen had been removed;

10. All of the light poles in the backyard had been torn out;

11. Debris were [sic] strewn throughout;

12. Dry concrete had been poured and mashed into carpets;

13. The built-in fireplace facade had been destroyed and the gas lines had been ripped out; and

14. Assorted animals had been slaughtered and dismembered and left in containers in the backyard.

Final Ruling (June 11, 2015) at pp. 7-8.

Subsequently, Avery obtained a contractor's bid estimating the cost of repairs that needed to be made to the Lancaster property at $90,000. In light of the damage done to the Lancaster property, the pending sale could not be completed and was cancelled. Avery also was unsuccessful in recovering the personal property transportation assets, and Jones ignored Avery's demands that Jones disclose information regarding the location of those assets, their registration and any liens held

against them.

In May 2014, Avery withdrew his opposition to conversion of Jones' bankruptcy case from chapter 7 to chapter 13. Shortly thereafter, the bankruptcy court entered a conversion order.

During the rest of 2014 and the first quarter of 2015, Jones attempted to confirm several different versions of his chapter 13 plan. Ultimately, the bankruptcy court denied confirmation of Jones' third amended chapter 13 plan. The court ruled that it would be impossible for Jones to obtain confirmation of a chapter 13 plan. According to the court, there were a number of unresolved inconsistencies regarding the case and regarding Jones' reporting of his assets.

At Avery's request, at the final plan confirmation hearing held on April 2, 2015, the court set a date for Avery and his former counsel and his former accountant – all three creditors holding chapter 7 administrative claims – to file a motion to dismiss Jones' case, with a bar to refiling and/or a bar to discharge.[3] The court also set May 6, 2014 as the date for that motion to be heard, but the court later continued the hearing date to June 10, 2014, because, at least initially, Avery only served the dismissal motion on Jones' counsel and not on Jones

---

[3]Whereas all three chapter 7 administrative claimants jointly filed an objection to Jones' third amended chapter 13 plan, only the attorney and the accountant were named as movants in the dismissal motion. Meanwhile, on appeal, Avery and his former attorney jointly filed an appellee's responsive brief. While the parties nominally opposing Jones changed somewhat over time, Jones has not raised any issue in relation to these changes, nor do we perceive any potentially dispositive issue concerning these changes. For ease of reference, we continue to refer to the party opposing Jones simply as Avery.

11

himself.

At the June 2014 hearing on the motion to dismiss, the bankruptcy court ruled that the case should be dismissed, that Jones should be permanently barred from discharging his existing debts, and that Jones additionally should be barred from filing another bankruptcy case for three years in the absence of prior bankruptcy court approval. In support of its ruling, the bankruptcy court stated that it was examining the totality of the circumstances and considering the following four factors articulated by the Ninth Circuit:

> (1) Whether the debtor misrepresented facts in his petition or plan, unfairly manipulated the Bankruptcy Code, or otherwise filed his Chapter 13 petition or plan in an inequitable manner;
>
> (2) The debtor's history of filings and dismissals;
>
> (3) Whether the debtor only intended to defeat state court litigation; and
>
> (4) whether egregious behavior is present.

Final Ruling (June 11, 2015) at p. 16 (citing Leavitt v. Soto (In re Leavitt), 171 F.3d 1219, 1224 (9th Cir. 1999).

Addressing the first Leavitt factor, the bankruptcy court found that Jones misrepresented in his petition and schedules the extent of his ownership in the Lancaster property (by not disclosing that he only held a 25% interest in the property). The bankruptcy court also found that Jones unfairly manipulated the bankruptcy process. According to the court, once Jones learned of Avery's intent to carry out his statutory duties as chapter 7 trustee to collect and liquidate Jones' assets, particularly the Lancaster property, Jones wholly refused to cooperate with Avery and instead sent a letter to Avery stating

12

that he no longer was seeking chapter 7 protection. In addition, the court noted, Jones obstructed Avery's efforts to sell the Lancaster property, ultimately by vandalizing the property, which led to cancellation of the sale.

The bankruptcy court also made two findings that led the court to conclude that Jones proposed his chapter 13 plans in an inequitable manner. First, the bankruptcy court found that Jones' plans either wholly omitted the allowed administrative claims of Avery and his professionals or proposed to pay those claims with a vacant lot rather than in cash. Second, the bankruptcy court found that Jones manipulated the income and expense figures in the various versions of his schedules I and J to support whatever at the moment he was attempting to propose in his plan.

Addressing the second Leavitt factor, the bankruptcy court turned its attention to the history of bankruptcy filings and dismissals in which Jones was involved. The bankruptcy court focused on the fractional interest bankruptcy scheme involving the Lancaster property. The bankruptcy court rejected Jones' argument that he only engaged in this scheme because a paralegal told him that the scheme was legal. The court, in effect, found that Jones was not credible on this point and that Jones knowingly and actively sought to obstruct all efforts undertaken to divest him of the Lancaster property.

As for the third Leavitt factor, the bankruptcy court found nothing in the record indicating the existence or status of state court litigation against Jones, so the court concluded that the third Leavitt factor was inapplicable. However, with respect to

13

the fourth Leavitt factor, the bankruptcy court found that Jones had acted egregiously in the following ways:

> by interfering with Avery's performance of his statutory duties and by vandalizing or allowing to be vandalized the Lancaster Property, which caused the cancellation of the sale. Further, it appears that Jones either removed or allowed to be removed from the Lancaster Property several vehicles that could have been liquidated for the benefit of creditors and the estate.

Final Ruling (June 11, 2015) at p. 128.

After determining that dismissal, rather than conversion back to chapter 7, was in the best interests of creditors, the bankruptcy court next addressed what restrictions it should impose on any future bankruptcy filings by Jones. In accordance with In re Leavitt, 171 F.3d at 1224, the bankruptcy court applied the same factors it had considered in dismissing Jones' bankruptcy case and held that Jones should be barred from discharging his existing debts in any future bankruptcy case. As an additional restriction on Jones' future bankruptcy filings, the bankruptcy court ruled that Jones would be barred for three years from filing another bankruptcy case unless he first obtained court approval to file bankruptcy. The bankruptcy court further specified that, in any future bankruptcy case filed by Jones, by his wife or by any person to whom Jones has transferred property, the filing party would need to file a copy of the bankruptcy court's final ruling in this matter within seven days of the filing of the bankruptcy petition.

Notwithstanding the above, the final written order of the bankruptcy court, based on a form of order submitted by Avery, went further. Whereas the bankruptcy court's ruling at the time

14

of the hearing only barred Jones from discharging his existing debts and from filing another bankruptcy for three years, the final written order also applied the same bars to Jones' wife, Elza.

On June 30, 2015, Jones and Elza timely filed their notice of appeal.

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

**ISSUES**

1. Did the bankruptcy court commit reversible error when it dismissed Jones' case based on Jones' bad faith, or when it imposed restrictions on Jones' future bankruptcy filings?
2. Did the bankruptcy court commit reversible error when it imposed restrictions on Elza's future bankruptcy filings?

**STANDARDS OF REVIEW**

We review the bankruptcy court's case dismissal and its restrictions on Jones' and Elza's future bankruptcy filings for an abuse of discretion. Ellsworth v. Lifescape Med. Assocs., P.C. (In re Ellsworth), 455 B.R. 904, 914 (9th BAP Cir. 2011); see also Richardson v. Melcher (In re Melcher), 2014 WL 1410235, at *9 (Mem. Dec.) (9th Cir. BAP Apr. 11, 2014).

The bankruptcy court abused its discretion if it applied an incorrect legal standard or its findings were illogical, implausible or without support in the record. United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

15

**DISCUSSION**

Under § 1307(c), the bankruptcy court may dismiss a chapter 13 bankruptcy case "for cause". The bad faith of the debtor in filing his or her bankruptcy petition is one type of cause for dismissal. In re Leavitt, 171 F.3d at 1224.

Jones has not challenged on appeal the legal standards the bankruptcy court applied in support of its decision to dismiss his case. We accept those standards as correct. The bankruptcy court correctly examined the totality of circumstances and duly considered the four factors enunciated in In re Leavitt, 171 F.3d at 1224.

Jones also has not challenged, in general, the procedures the bankruptcy court employed before dismissing his case and before imposing restrictions on Jones' future bankruptcy filings. Jones had sufficient notice and time to respond to Avery's motion, which specifically sought dismissal of the current case, a bar to discharge existing debts in future cases, and a permanent bar to filing a new bankruptcy case absent prior court approval. Nor did Jones request either an evidentiary hearing or a continuance of the dismissal hearing for the purpose of further addressing the proposed restrictions. Moreover, the bankruptcy court duly considered alternatives to the restrictions Avery proposed and, in fact, opted for a three-year ban on future filings in lieu of the permanent ban Avery requested. Under these circumstances, we cannot say that the procedures employed by the bankruptcy court were fatally deficient with respect to Jones. See In re Ellsworth, 455 B.R. at 922-23.

On appeal, Jones primarily challenges a handful of the

16

bankruptcy court's findings and the weight the court gave to other findings in determining that Jones filed his bankruptcy petition in bad faith. Jones concentrates heavily on the bankruptcy court's finding that all four versions of his chapter 13 plan were proposed in an inequitable manner. Jones contends that the plans were both feasible and equitable. More specifically, Jones points out that, at the time his original plan and his first amended plan were filed, he did not provide for any chapter 7 administrative claims because none of the chapter 7 administrative creditors had yet requested or obtained allowance of their administrative claims. He also points out that his second and third amended plans did contain provisions aimed at paying the chapter 7 administrative claimants.

Jones further argues that, in determining his plans to be inequitable, the bankruptcy court should not have made a finding that Jones changed the amounts he reported in the various versions of his Schedules I and J to support whatever he was proposing at the time in his various proposed plans. According to Jones, the court violated his constitutional due process rights by considering the inconsistent Schedules I and J because they were not discussed in Avery's dismissal motion.

We disagree. Due process is a relatively minimal standard that only requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). Avery's moving papers made it clear that Avery was seeking dismissal of Jones' bankruptcy case, a bar to

17

discharging existing debts in future bankruptcy cases and a permanent bar to refiling bankruptcy absent advance court approval. The moving papers also identified the correct legal standard, which required the bankruptcy court to examine "all of the relevant facts and circumstances in a case." Motion (April 10, 2015) at 20:3-4. Under this exceptionally broad standard, Jones cannot credibly argue that inconsistencies within his bankruptcy schedules were beyond the scope of the dismissal motion. Nor can Jones credibly argue that the information contained in the schedules was unknown to him, as he was the one who filed them.

That Jones, as a matter of strategy or tactics, chose not to address the inconsistencies in his schedules is not a violation of his due process rights. Tellingly, the bankruptcy court's concerns regarding the inconsistent amounts in Jones' Schedules I and J were disclosed in the bankruptcy court's tentative ruling, which was emailed to the parties the day before the hearing on the dismissal motion. Yet Jones did not comment on those concerns at the hearing, nor did he ask for more time to address those concerns. Indeed, even on appeal, Jones has not offered any alternate explanation for the inconsistencies in his Schedules I and J – documents within his own knowledge and control. In short, the only plausible explanation ever offered for Jones' inconsistent Schedules I and J was the explanation the bankruptcy court inferred: that Jones changed the income and expense amounts stated in his Schedules I and J to support whatever proposal he was making at the time in his chapter 13 plan.

18

As for the bankruptcy court's criticism of Jones' plan treatment of his chapter 7 administrative creditors, even if we were to assume that there is some merit to Jones' complaints regarding this criticism, this criticism was one of two alternate findings on which the bankruptcy court based its determination that Jones had filed his chapter 13 plans inequitably. As explained above, Jones' challenge to the alternate finding – regarding changes to his Schedules I and J to suit his plan needs – lacks merit.

Moreover, the court's determination that Jones filed his plans in an inequitable manner was one of three alternate grounds the bankruptcy court offered for concluding that the first factor enunciated in In re Leavitt was satisfied. The bankruptcy court additionally determined that Jones misrepresented facts in his petition and that Jones attempted to unfairly manipulate the bankruptcy process. In support of its misrepresented facts determination, the bankruptcy court relied on the undisputed fact that Jones' amended schedules indicated that he held a 100% fee simple ownership interest in the Lancaster property and the undisputed fact that nowhere in Jones' schedules did he mention that he had conveyed 25% fractional interests in that property to Theophilious, Carranza and Herbert, thereby reducing his own interest to 25%.

In support of its unfair manipulation of the bankruptcy process determination, the bankruptcy court pointed to Jones' refusal to appear for examination at the continued § 341(a) meeting of creditors and his efforts to obstruct Avery's attempts to liquidate his assets for the estate's benefit, including his

19

vandalization of the Lancaster property, which led to the cancellation of the pending sale of that property.

Jones' argument on appeal attacking these findings is exceptionally weak. Without explanation, Jones characterizes the bankruptcy court's findings regarding his refusal to appear for examination at his continued § 341(a) meeting and his failure to accurately list his actual ownership interest in the Lancaster property as immaterial or of minimal probative value. We disagree. Jones had statutory duties both to appear for examination and to accurately list his assets in his bankruptcy schedules. See §§ 343, 521. The debtor's full, complete and accurate disclosure of his financial affairs in his bankruptcy case is essential to the functioning of our bankruptcy system. Searles v. Riley (In re Searles), 317 B.R. 368, 378 (9th Cir. BAP 2004), aff'd, 212 Fed. Appx. 589 (9th Cir. 2006). More to the point, Jones' failure to cooperate in the financial disclosure process is highly indicative of his unfairly gaming the bankruptcy system, as the bankruptcy court essentially found.

As for the bankruptcy court's finding that Jones vandalized the Lancaster property before moving out (or that he permitted others to vandalize the property while he was in possession and control of the property), Jones' challenge to this finding is twofold. First, Jones claims that he was denied due process because Avery refused his requests to access the property so that he could inspect the alleged damage and respond to the charges of vandalism and waste. Second, Jones contends that the evidence in the record does not reasonably support the bankruptcy court's finding that Jones vandalized the Lancaster property or permitted

20

it to be vandalized. According to Jones, the bankruptcy court had no evidence before it that would allow it reasonably to infer that Jones vandalized the property at the time he moved out.

Jones was not denied due process. If Jones desired to inspect the Lancaster property and if Avery refused access to Jones for that purpose, Jones could have sought relief from the bankruptcy court in the form of a motion seeking to compel Avery to permit the inspection. Jones' alleged waste of the Lancaster property was at issue in Avery's adversary proceeding against Jones (Adv. No. 13-01559) since April 2014, so Jones had ample time and incentive to pursue the issue of an inspection in conjunction with that adversary proceeding. But Jones never requested relief in that adversary proceeding seeking to compel Avery to permit that inspection. Nor did Jones request such relief in the main bankruptcy case. Jones' failure to pursue his rights by filing an appropriate motion with the court does not constitute a violation of Jones' due process rights.

As for the bankruptcy court's finding that Jones vandalized the Lancaster property, that finding was not illogical, was not implausible, and was supported by reasonable inferences drawn from the facts in the record. Avery submitted sufficient evidence to support the bankruptcy court's finding. That evidence included the declaration testimony of several witnesses who observed the condition of the Lancaster property immediately after Jones moved out. The evidence also included photographs showing the condition of the property both before and after Jones moved out. Jones never objected to any of the evidence offered by Avery.

The evidence also included Jones' declaration stating that the Lancaster property was his "pride and joy" and that he never would have destroyed any part of it. Jones did admit, however, that he removed from the property a number of fixtures including a walk-in freezer, a marble table top, and an oven and oven hood. These admissions are consistent with other admissions that Jones made in other declarations he filed in the bankruptcy court. For instance, in a declaration he filed in March 2014 in the main bankruptcy case, Jones admitted to removing refrigeration units, kitchen equipment, and "other equipment throughout the premises." In another declaration filed in April 2014 in Avery's adversary proceeding against Jones, Jones admitted to removing the above-referenced fixtures as well as ceiling fans. While Jones protested that he and his movers were very careful not to damage anything as they moved him out of the Lancaster property, the bankruptcy court apparently found Jones not credible on this point. Instead, the bankruptcy court found that, as part of Jones' ongoing efforts to obstruct Avery's attempted sale of the Lancaster property, Jones vandalized the property before he moved out. On this record, we cannot say that the bankruptcy court's view of the evidence or the inferences it drew from that evidence were unreasonable. Accordingly, we have no basis to overturn the bankruptcy court's determination that Jones unfairly manipulated the bankruptcy process or to overturn the findings on which the bankruptcy court based that determination.

This only leaves the bankruptcy court's determination that Jones' conduct was egregious – the final relevant In re Leavitt factor. Jones contends that his conduct did not rise to the

22

level of egregiousness required to justify the restrictions on future bankruptcy filings the bankruptcy court imposed. In challenging the bankruptcy court's egregiousness determination, Jones, in essence, claims that something more in the way of misconduct was required before the bankruptcy court properly could order a bar to discharge and a three-year bar to refiling. We will address each restriction on future filings in turn.

The bankruptcy court articulated the correct standard for dismissing a case with a bar to discharging existing debts in future cases. See 11 U.S.C. § 349(a); In re Leavitt, 171 F.3d at 1224; In re Ellsworth, 455 B.R. at 922. When the bankruptcy court dismisses a case with a bar to discharging debts in future bankruptcy cases, the bankruptcy court must consider the four In re Leavitt factors and must find egregious conduct. In re Leavitt, 171 F.3d at 1224 ("a finding of bad faith based on egregious behavior can justify dismissal with prejudice").

There is no standard definition as to what constitutes egregious conduct for purposes of dismissing a bankruptcy case with prejudice. Rather, the holdings in In re Leavitt and In re Ellsworth suggest that the egregiousness determination ordinarily should be made on a case-by-case basis. We see no justification to depart from that methodology here, nor has Jones offered us any justification. Suffice it to say that Jones' fractional interest bankruptcy scheme, his refusal to satisfy his duties to fully and accurately disclose his financial affairs, his obstruction of the trustee's sale of the Lancaster property and his changing the amounts stated in his Schedules I and J to suit the needs of his proposed chapter 13 plans, when considered

23

together, more than sufficiently justify the bankruptcy court's egregiousness determination and dismissal of Jones' case with a bar to discharging existing debts in future bankruptcy cases.

The bankruptcy court also correctly stated the standards for imposing a permanent bar to refiling absent a prior court order – often referred to as a prefiling order. Citing In re Melcher, 2014 WL 1410235, at *9-*10, the bankruptcy court stated that, before a bankruptcy court enters an indefinite prefiling order against a debtor, the court must do all of the following: (1) ensure that the debtor has been given adequate notice and opportunity for hearing; (2) facilitate the development of an adequate record enumerating the debtor's abusive activities; (3) determine that the debtor's positions were frivolous or were brought with the intent to harass other parties; and (4) narrowly tailor the remedy to deter the debtor's specific misconduct. Id. at *9 (citing DeLong v. Hennessey, 912 F.2d 1144, 1147-48 (9th Cir. 1990)).

In turn, in performing the third and fourth tasks set forth above, the bankruptcy court must consider the following five factors:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g. does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

In re Melcher, 2014 WL 1410235, at *10 (quoting Safir v. U.S. Lines, Inc., 792 F.2d 19, 24 (2d Cir. 1986), cited with approval

24

in, Molski v. Evergreen Dynasty Corp., 500 F.3d 1047, 1058 (9th Cir. 2007)).

However, when the bankruptcy court ruled that it would impose a three-year prefiling order, it did not make specific findings addressing each of the five Safir factors.[4]  Instead, the bankruptcy court relied on the findings and analysis it already had made in its decision to dismiss the case for bad faith.  As the bankruptcy court put it:

> I will impose a three-year bar to refiling based upon my analysis of the facts in this case, as well as the relevant case law that's cited in the tentative ruling. I believe that a three-year bar to filing another case is appropriate.  And again, that's a three-year bar absent an order [of] the Court authorizing such filing.

Hr'g Tr. (June 10, 2015) at 17:7-13.

Even so, we do not consider the bankruptcy court's three year prefiling order fatally deficient.  When, as here, the record is fully developed and is sufficient to support the bankruptcy court's ultimate conclusion, we do not need to remand for further findings.  Simeonoff v. Hiner, 249 F.3d 883, 891 (9th Cir. 2001).  Nor is remand necessary when, as here, the appellate court reasonably can infer from the bankruptcy court's findings other facts that would suffice to support the bankruptcy court's decision.  Brock v. Big Bear Market No. 3, 825 F.2d 1381, 1384 (9th Cir. 1987).

The first Safir factor – inquiring into Jones' history of

---

[4]The bankruptcy court apparently considered explicit findings on all five of the Safir factors necessary only if it was going to impose a permanent prefiling order.  See Final Ruling (June 11, 2015) at p. 23 n.17.

25

vexatious, harassing or duplicative lawsuits – effectively was satisfied by the facts the bankruptcy court found regarding Jones' fractional interest bankruptcy scheme and the facts surrounding Jones' 2013 chapter 7 bankruptcy filing. As for the second Safir factor – examining the motives behind Jones' litigation, we reasonably can infer from the bankruptcy court's findings that Jones did not harbor any **objective** good faith expectation that he would prevail on any of the positions taken in the bankruptcies filed by Theophilious, Carranza and Herbert or on any of the positions taken in his own 2013 bankruptcy case, particularly before he converted his case to chapter 13. To the contrary, the overwhelming weight of the evidence, and the bankruptcy court's specific findings, demonstrate that the positions taken in all four of these bankruptcy cases were part of a scheme orchestrated by Jones to prevent him from losing his real property assets to foreclosure, without him desiring or intending to obtain actual bankruptcy relief.

Regarding the third Safir factor – representation by counsel – it is not apparent that Jones was represented by counsel at the time he engaged in his fractional interest bankruptcy scheme or when he filed his chapter 7 petition. Nonetheless, the tactics and strategy Jones employed throughout demonstrate both volition and a significant level of sophistication in unfairly manipulating the bankruptcy process in order to keep his secured creditors and the chapter 7 trustee at bay.

With respect to the fourth Safir factor – focusing on the burden and expense Jones' positions imposed on others and the needlessness of that burden and expense – the bankruptcy court's

26

findings and the record establish that all of Jones' creditors, both secured and unsecured, needlessly lost out on recovering on account of their claims as a result of Jones' tactics in unfairly manipulating the bankruptcy process.

Finally, on the fifth Safir factor – concerning the availability of other sanctions sufficient to protect the courts and third parties – both the bankruptcy court's written final ruling and its comments at the June 2015 dismissal motion hearing reflect that the court gave careful thought to whether a prefiling order was necessary and the appropriate duration of the prefiling order.  Simply put, we are convinced that the bankruptcy court's three-year prefiling order was narrowly tailored to deter Jones from filing another bankruptcy as part of an effort to further hinder his existing secured and unsecured creditors.

The substance and procedure relating to the relief granted against Elza are an entirely different matter.  We are not aware of any provision of the bankruptcy code giving the bankruptcy court authority to place restrictions on a **non-debtor party** from filing a future bankruptcy case in the context of a motion to dismiss someone else's bankruptcy case.  To the extent a bankruptcy court might be able to grant such relief under its general equitable authority,[5] the bankruptcy court would need to

---

[5]This is a questionable proposition after Law v. Siegel, 134 S.Ct. 1188, 1194-95 (2014), in which the Supreme Court emphatically reaffirmed the principle that, "'whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of' the Bankruptcy Code."  Id.
(continued...)

27

exercise that authority with extreme caution and would need to carefully balance the affected parties' respective rights after ample notice and opportunity for hearing, which typically would include the procedural protections afforded in an adversary proceeding. See In re Van Ness, 399 B.R. 897, 904 (Bankr. E.D. Cal. 2009), cited with approval in, Ellis v. Yu (In re Ellis), 523 B.R. 673, 679 n.9 (9th Cir. BAP 2014).

Here, there was no adversary proceeding initiated against Elza. She was not even named as a party in Avery's motion to dismiss, nor did Avery's motion request any relief directly against her. Furthermore, the bankruptcy court did not make any findings pertaining to Elza. In fact, there was no evidence in the record from which the bankruptcy court reasonably could have inferred that Elza actively participated in any of Jones' misconduct, let alone evidence that would justify such extraordinary relief as restricting Elza's future bankruptcy filings.

Under these circumstances, the bankruptcy court committed reversible error when it imposed bankruptcy filing restrictions against Elza. In this limited respect, the bankruptcy court's order was both substantively and procedurally deficient.

## CONCLUSION

For the reasons set forth above, we REVERSE those portions of the dismissal order barring Elza from discharging her existing debts in any future bankruptcy case and barring her from filing

_____

[5](...continued)
(quoting Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 206 (1988)).

28

bankruptcy for three years in the absence of a prefiling order permitting such filing.  All other aspects of the bankruptcy court's dismissal order are AFFIRMED.