In re Jonathan Barnes
LEAVITT, Debtor.

Jonathan Barnes Leavitt, Appellant,

v.

Carlos Soto, Appellee.

No. 97–16525.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 5, 1998.

Decided March 26, 1999.

David Ashley Smyth, Law Offices of David A. Smyth, Walnut Creek, California, for the appellant.

Susan H. Handelman (argued), Ellen R. Krakow (on briefs), Ropers, Majeski, Kohn & Bentley, Redwood City, California, for the appellee.

Before: FLETCHER and TASHIMA, Circuit Judges, and BRYAN,[1] District Judge.

BRYAN, District Judge:

This appeal requires us to establish the appropriate standard of bad faith as "cause" to dismiss a Chapter 13[2] bankruptcy petition with prejudice. The Chapter 13 petition of debtor/appellant Jonathan Barnes Leavitt ("Leavitt") was dismissed with prejudice by the Bankruptcy Court based on its findings that Leavitt's concealment of assets and inflation of expenses amounted to bad faith. The Bankruptcy Appellate Panel ("BAP") affirmed the dismissal in *In re Leavitt*, 209 B.R. 935 (9th Cir.BAP1997). We have jurisdiction pursuant to 28 U.S.C. § 158(d), and we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellee Carlos Soto ("Soto") was Leavitt's business partner in a business known as Great America Waterproofing. During their partnership, Leavitt secretly set up a new entity that he named Great American Waterproofing,[3] and in which he claimed

---

1. The Honorable Robert J. Bryan, United States District Judge for the Western District of Washington sitting by designation.

2. Unless otherwise indicated, all references to "chapter" and "section" are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330. Chapter 13 applies to individuals with regular income and debts within limits established by statute. § 109(e); §§ 1301–1330 (1994).

3. Leavitt's business with Soto was called Great *America* Waterproofing.

sole ownership. Unbeknownst to Soto, Leavitt set up new bank accounts, filed fictitious business name statements, secured a separate business license, canceled the Leavitt–Soto partnership license and insurance, rented a secret post office box, and diverted partnership funds and accounts. After completion of these tasks, Leavitt informed Soto that he wished to dissolve their partnership. Soto suddenly found himself without a business or a license while Leavitt continued without interruption to do business through his new business entity.

Soto sued Leavitt in the California Superior Court in San Mateo County for fraud, conversion of partnership assets, breach of fiduciary duty and breach of contract. Following a jury verdict in Soto's favor, the parties stipulated to entry of judgment for $227,893.83 on November 15, 1995. On November 6, 1995, after the jury's verdict but before formal entry of the judgment, Leavitt filed a Chapter 13 petition and plan. In his petition he listed several creditors, among them were the Internal Revenue Service ("IRS") for $53,123.23 for 1994 income taxes, and the judgment in favor of Soto.[4]

Leavitt's Chapter 13 petition indicated that he was earning $72,000 per year, plus several thousand dollars of business profits. In his first plan, he proposed to pay to his administrative, secured and priority creditors $100 per month for the first twelve months and $1,520 per month for the next forty-eight months. He proposed no payments to his unsecured creditors, including Soto. The plan allowed payment of other monthly expenses such as car payments on two newer vehicles totaling $715.44, transportation costs of $300, piano lessons and school supplies of $220 and food expenses of $850.

On January 11, 1996, Soto moved to dismiss the Chapter 13 petition in the bankruptcy court on the ground that Leavitt filed it in bad faith for the improper

purpose of avoiding the judgment debt. The motion cited the timing of the petition and the judgment, Leavitt's failure to file the Chapter 13 schedules or plan timely, the proposed plan's zero allocation to the judgment debt, and misrepresentations and excessive expenses in the schedules. The bankruptcy court held a hearing on the motion on March 16, 1996. At the hearing, the court told Leavitt that his plan would not be confirmed unless it allocated at least thirty percent of his income to Soto's judgment debt, and gave Leavitt ten days to file an amended plan. The evidentiary portion of the hearing on Soto's motion was rescheduled for April 12, 1996. On March 26, 1996, Leavitt filed an amended plan, allocating only three percent to the unsecured creditors, including Soto's judgment debt.

During the evidentiary hearing on April 12, 1996, Leavitt testified that he omitted certain assets from his schedules, and that his listed expenses included several inaccuracies. Specifically, Leavitt admitted that:

1) He was the sole owner of a health care merchandise business, known as L–2 Enterprises.

2) He estimated the value of his waterproofing business at $10,000 even though an expert at the state court trial had valued it at $150,000.

3) He had made cash payments to relatives totaling $16,000.

4) After filing his Chapter 13 petition, he took $36,000 from his waterproofing business's receivables and borrowed $10,000 from relatives, which he used to purchase a home in his wife's name. Neither the monies received nor the home mortgage were disclosed in his bankruptcy petition or to the bankruptcy trustee.

5) He borrowed $12,000 from his mother-in-law to pay business expenses.

6) He overstated his transportation, food and living expenses.

4. Leavitt's conduct before the petition was filed was not taken into account by the bankruptcy court in its determination of bad faith.

7) He wrote himself two checks totaling $10,000, the first on the day before the evidentiary hearing, and the second four days after the first check.

8) He failed to disclose payments to trade creditors made within 90 days before filing the Chapter 13 petition.

After hearing the evidence, the bankruptcy court granted Soto's motion and dismissed Leavitt's petition. The court retained jurisdiction to determine whether the dismissal should be with or without prejudice. The court noted that if the petition was dismissed without prejudice, Leavitt could refile, but if the petition was dismissed with prejudice, Leavitt would be barred from discharging the debt under any chapter. The court commented:

> My sense is that this Chapter 13 is not going to work. The kinds of non disclosure and concealment that went on here seem to me to make this Debtor not a good candidate for any kind of a Chapter 13, where there's an operating business where expenses can be inflated to reduce net income.

Leavitt filed further briefing, arguing that he did not omit the information deliberately, and that he provided the missing information at the debtor's examination before the hearing. He also offered to sell or refinance his home and submit the $36,-000 from business receivables to the bankruptcy estate.

On April 19, 1997, the court heard further arguments from counsel regarding various options in lieu of dismissal with prejudice. On submission of the issue, the court ruled as follows:

> On further reflection, having had recalled to my mind the testimony presented at the prior hearing, I am thinking further about what would face this court in the event of a future case. I believe that there would be no point in having a hearing—an evidentiary hearing in a new case, repeating the evidence presented in the prior case, and I do think the evidence is sufficient to support, and I do think it's appropriate, to

grant dismissal with prejudice at this time.

The court entered a written order on April 26, 1997, dismissing Leavitt's Chapter 13 petition with prejudice.

Leavitt appealed to the BAP, arguing that the bankruptcy court failed to make specific findings of bad faith or "cause," that the court's finding of bad faith was erroneous because Leavitt had presented evidence that his omissions were inadvertent and not made with a dishonest motive, and that the omissions did not prejudice Soto because Soto was aware of the omitted items. Leavitt also argued that the bankruptcy court abused its discretion by permanently barring him from discharge rather than establishing a time limit before refiling.

In its decision affirming the bankruptcy court, the BAP held that the evidence supported the court's findings that Leavitt concealed assets and inflated expenses, that the findings were not clearly erroneous, and that the evidence supported the court's conclusion that the Chapter 13 petition was filed in bad faith. *In re Leavitt,* 209 B.R. at 940. The BAP further held that the bankruptcy court's oral findings were sufficiently specific because of the "reference to the facts established by the unrefuted evidence" and, along with the record, "clearly indicated that Soto's motion to dismiss was granted on the basis of Debtor's bad faith." *Id.*

## STANDARD OF REVIEW

■ We review de novo the legal conclusions of the BAP. *In re Pace,* 56 F.3d 1170, 1173 (9th Cir.1995). Since the BAP's decision is based on the bankruptcy court's order, we review the conclusions of law of the bankruptcy court de novo and its factual findings for clear error. *In re Parker,* 139 F.3d 668, 670 (9th Cir.1998), *cert. denied, McClellan Federal Credit Union v. Parker,* —— U.S. ——, 119 S.Ct. 592, 142 L.Ed.2d 535 (1998); *In re Kim,* 130 F.3d 863, 865 (9th Cir.1997). We also review the bankruptcy court's finding of bad faith

for clear error, *In re Eisen*, 14 F.3d 469, 470 (9th Cir.1994), and the bankruptcy court's decision to dismiss a case for abuse of discretion, *In re Marsch*, 36 F.3d 825, 828 (9th Cir.1994); *In re Morimoto*, 171 B.R. 85, 86 (9th Cir. BAP 1994).

 Leavitt contends that we must remand the case to the bankruptcy court for written findings of fact. We decline to do so. The standard for adequacy of factual findings in the Ninth Circuit is "whether they are explicit enough on the ultimate issues to give the appellate court a clear understanding of the basis of the decision and to enable it to determine the grounds on which the trial court reached its decision." *In re Bradford*, 112 B.R. 347, 353 (9th Cir. BAP 1990) (citing *Louie v. United States*, 776 F.2d 819, 822–23 (9th Cir.1985)). The appellate court may affirm the lower court on any ground fairly supported by the record. *United States v. Hemmen*, 51 F.3d 883, 891 (9th Cir.1995). Remand is not required when express findings are not made, if "a complete understanding of the issues may be had [from the record] without the aid of separate findings." *Kanarek v. Hatch*, 827 F.2d 1389, 1391 (9th Cir.1987); *In re Hopkins*, 201 B.R. 993, 995 (D.Nev.1996) (holding that, although there were no specific findings other than comments at the hearing, the record supported a finding of bad faith).

We agree with the BAP that the bankruptcy court's oral statements at the conclusion of the first evidentiary hearing, and the court's oral explanation for its order of dismissal with prejudice, make clear reference to the facts established by the evidence and provide a clear and complete understanding of the basis for its ruling. *Leavitt*, 209 B.R. at 940.

## DISCUSSION

A Chapter 13 case concludes in one of three ways: discharge pursuant to § 1328, conversion[5] to a Chapter 7 case pursuant to § 1307(c) or dismissal of a Chapter 13 case "for cause" under § 1307(c). Here, we are only concerned with dismissal.

 The dismissal of bankruptcy cases with and without prejudice is authorized by § 349(a):

(a) Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g)[6] of this title.

Generally, dismissals are ordered without prejudice to carry out the remedial purpose of the Bankruptcy Code and to restore property rights, insofar as is practicable, to the same positions as when the case was first filed, but without affecting the disposition of debts. *In re Tomlin*, 105 F.3d 933, 936–37 (4th Cir.1997); *In re Lawson*, 156 B.R. 43, 45 (9th Cir.BAP 1993). The phrase "[u]nless the court, for cause, orders otherwise" in Section 349(a) authorizes the bankruptcy court to dismiss the case with prejudice. *See also In re Tomlin*, 105 F.3d at 937; 3 Collier on Bankruptcy § 369.01, at 349–2–3 (15th ed.1997). A dismissal with prejudice bars further bankruptcy proceedings between

---

5. In this case, conversion was not possible because Leavitt had obtained a discharge in a Chapter 7 bankruptcy filed less than seven years ago.

6. Section 109(g) states:
 Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—

(1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case; or
(2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.

the parties and is a complete adjudication of the issues. *Tomlin,* 105 F.3d at 936–37.

■■■■■ "Cause" for dismissal under § 349 has not been specifically defined by the Bankruptcy Code. For Chapter 13 cases, §§ 1307(c)(1) through (10) [7] provide that the bankruptcy court may convert or dismiss, depending on the best interests of the creditors and the estate, for any of ten enumerated circumstances. Although not specifically listed, bad faith is a "cause" for dismissal under § 1307(c). *Eisen,* 14 F.3d at 470 ("A Chapter 13 petition filed in bad faith may be dismissed 'for cause' pursuant to 11 U.S.C. § 1307(c)."); *In re Hopkins,* 201 B.R. at 995 (holding that the debtors' filing of frivolous tax returns with no intention to pay taxes warranted dismissal of a Chapter 13 petition for bad faith). Therefore, it follows that a finding of bad faith based on egregious behavior can justify dismissal with prejudice. *Tomlin,* 105 F.3d at 937; *In re Morimoto,* 171 B.R. at 86; *In re Huerta,* 137 B.R. 356, 374 (Bankr.C.D.Cal.1992). We hold that bad faith is "cause" for a dismissal of a Chapter 13 case with prejudice under § 349(a) and § 1307(c).

Leavitt contends that the proper test for a bad faith dismissal is whether the debtor used the bankruptcy system to "stubbornly, persistently and wrongfully thwart creditors." We reject Leavitt's proposed test, which is without foundation in law.

■■■■■ Bad faith, as cause for the dismissal of a Chapter 13 petition with prejudice, involves the application of the "totality of the circumstances" test. *Eisen,* 14 F.3d at 470. The bankruptcy court should consider the following factors:

(1) whether the debtor "misrepresented facts in his [petition or] plan, unfairly manipulated the Bankruptcy Code, or otherwise [filed] his Chapter 13 [petition or] plan in an inequitable manner," *id.* (citing *In re Goeb,* 675 F.2d 1386, 1391 (9th Cir.1982));

(2) "the debtor's history of filings and dismissals," *id.* (citing *In re Nash,* 765 F.2d 1410, 1415 (9th Cir.1985));

(3) whether "the debtor only intended to defeat state court litigation," *id.* (citing *In re Chinichian,* 784 F.2d 1440, 1445–46 (9th Cir.1986)); and

(4) whether egregious behavior is present, *Tomlin,* 105 F.3d at 937; *In re Bradley,* 38 B.R. 425, 432 (Bankr. C.D.Cal.1984).

■■■■■ A finding of bad faith does not require fraudulent intent by the debtor. [N]either malice nor actual fraud is required to find a lack of good faith. The

---

7. Section 1307(c) states as follows:

(c) Except as provided in subsection (e) of this section, on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, including-

(1) unreasonable delay by the debtor that is prejudicial to creditors;

(2) nonpayment of any fees and charges required under chapter 123 of title 28;

(3) failure to file a plan timely under section 1321 of this title;

(4) failure to commence making timely payments under section 1326 of this title;

(5) denial of confirmation of a plan under section 1325 of this title and denial of a request made for additional time for filing another plan or a modification of a plan;

(6) material default by the debtor with respect to a term of a confirmed plan;

(7) revocation of the order of confirmation under section 1330 of this title, and denial of confirmation of a modified plan under section 1329 of this title;

(8) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan other than completion of payments under the plan;

(9) only on request of the United States trustee, failure of the debtor to file, within fifteen days, or such additional time as the court may allow, after the filing of the petition commencing such case, the information required by paragraph (1) of section 521; or

(10) only on request of the United States trustee, failure to timely file the information required by paragraph (2) of section 521.

bankruptcy judge is not required to have evidence of debtor illwill directed at creditors, or that debtor was affirmatively attempting to violate the law-malfeasance is not a prerequisite to bad faith.

*In re Powers,* 135 B.R. 980, 994 (Bankr. C.D.Cal.1991) (relying on *In re Waldron,* 785 F.2d 936, 941 (11th Cir.1986)).

We agree with the BAP that the record provides ample support for the bankruptcy court's findings that Leavitt's conduct in his Chapter 13 case amounted to bad faith and can fairly be described as egregious. Application of the four factors listed above to the facts in this case reinforces this conclusion.

As to the first bad faith factor of misrepresentation and inequitable manipulation of the code, Leavitt's dishonesty pervaded the proceedings. He failed to fully disclose his assets and financial dealings. His initial schedules omitted some assets and undervalued others. His expenses were inflated. His first plan offered nothing to his largest unsecured creditor, Soto. This was inequitable, considering Leavitt's available assets and income. When ordered by the bankruptcy court to amend his plan to include at least thirty percent payment to his unsecured creditors, including Soto, Leavitt's amendment proposed only three percent. Finally, Leavitt's failure to disclose receipt of $36,000 and the purchase of a new home during the pendency of the case can hardly be considered equitable to his creditors.

At no time did Leavitt volunteer to supplement his petition or his plan to correct the omissions and overstatements in his schedules. He only provided the correct information after a pressing debtor's examination in preparation for the evidentiary hearing. At no time did Leavitt offer the bankruptcy court any reasonable explanation for his conduct. Given the number of financial dealings and the value of the assets omitted, those omissions cannot be considered innocent.

The second factor requires review of the debtor's history of filings and dismissals. The record shows that the petition at issue here was Leavitt's second bankruptcy case in less than six years. Further, Leavitt went on to file three more Chapter 13 petitions in the Bankruptcy Court of the Central District of California[8] with the same goal: avoidance of Soto's judgment. The second petition, SV–96–14767–GM, filed on May 1, 1996, was dismissed with prejudice on July 10, 1996. There, the bankruptcy court barred further filings for 180 days, and granted Soto $5,500 in sanctions. On August 1, 1996, Leavitt filed his third petition under a different social security number. The third petition was dismissed by the Clerk of the Court on August 15, 1996. The fourth petition, and the subject of a second BAP appeal, was filed with a third social security number. The bankruptcy court dismissed the fourth petition with prejudice as a bad faith filing in violation of the order of dismissal at issue here and the order of dismissal of the second petition, SV–96–14767–GM. In an unpublished decision, the BAP affirmed the bankruptcy court's dismissal of the fourth petition. Leavitt's conduct clearly shows his willingness to use inappropriate filings to seek a discharge of the state court judgment against Soto.

Next, we consider the third factor, that is whether the debtor only intended to defeat state court litigation. Leavitt's actions clearly demonstrate an intent to discharge Soto's state court judgment against him. The timing of his first filing, within two weeks of Soto's judgment, and his three other filings demonstrate that avoidance of Soto's judgment was Leavitt's primary motive.

Fourth, we consider whether egregious behavior is present. Leavitt offers no real

---

8. We grant Soto's request to take judicial notice of a Memorandum decision and Order issued by the BAP in *In re Leavitt,* BAP No. CC–96–2022–HBMe, filed October 10, 1997.

This case is a related appeal not identified by Leavitt in his *Certification of Related Cases* as required by 9th Cir. R. 28–2.6(c).

justification or excuse for his actions. His clear intention was to use the Bankruptcy system to avoid payment of Soto's judgment. Leavitt's behavior was clearly egregious.

Finally, less offensive conduct has been upheld as grounds for dismissal with prejudice. In *Morimoto,* 171 B.R. at 86–87, the debtor, a "tax protestor," filed her Chapter 13 petition with the intention of avoiding payment of federal income taxes. In *Hopkins,* 201 B.R. at 994–95, the debtors failed to file proper income tax returns, and indicated zero taxable income despite W–2 forms showing substantial wages earned. The debtor in *Tomlin* failed to attend the initial creditors' meeting or to timely file her schedules. 105 F.3d at 941. *Morimoto, Hopkins* and *Tomlin* were all properly dismissed with prejudice.

## CONCLUSION

When viewed in the totality of the circumstances, the record before the bankruptcy court fully supports its findings that Leavitt's conduct was in bad faith. The bankruptcy court did not abuse its discretion by concluding that Leavitt's bad faith justified dismissal with prejudice.

**AFFIRMED.**