OPINION
FERNANDEZ, Circuit Judge:
Zafar David Khan and Terrance Alexander Tomkow (collectively “Debtors”) appeal the judgment[1] of the Bankruptcy Appellate Panel of the Ninth Circuit (“BAP”), which affirmed the decision of the bankruptcy court that the claim of Kenneth Barton was not subordinated pursuant to the provisions of 11 U.S.C. § 510(b),[2] and converted[3] the Debtors’ Chapter 13 bankruptcy proceedings[4] to Chapter 7 proceedings.[5] We affirm the decision of the bankruptcy court.
BACKGROUND
In 2013, Barton obtained a Superior Court of the State of California (“Superior Court”) judgment against the Debtors and RPost International, Ltd. (“RIL”) for conversion, fraud, breach of fiduciary duty, and violation of California Business and Professions Code Section 17200, based upon Barton’s allegations that the Debtors fraudulently converted his 6,016,500 shares of common stock in RIL.
The Superior Court found that after Barton and the Debtors founded RIL, they each received an initial distribution of RIL stock in 2001. The consideration for the stock “was stated to be unreimbursed expenses and compensation.”
After suffering a stroke, Barton took leave from RIL. Thereafter, the Debtors cancelled Barton’s shares of stock and returned them to the RIL treasury in June or July of 2009. The Superior Court held that the Debtors fraudulently converted Barton’s stock in 2009 and determined that they had forged corporate resolutions in an attempt to support their fraud and either “misplaced or destroyed” the shareholder registry, which was “the best evidence of the issuance of [the] stock.” The Superior Court then ruled that Barton should recover damages and that his 6,016,500 shares should be reinstated. After further hearings, the Superior Court determined Barton should, instead, receive the value of the converted stock. Therefore, it fixed damages for the conversion at $3,850,560, based upon the value of the RIL stock as of June 30, 2009, the date of conversion, which was $0,64 per share. After adjustments, a judgment including *1062 $3,840,060 for the converted shares was entered in Barton’s favor.
A few days before the Superior Court intended to determine the value of the RIL stock for the award of compensatory and punitive damages, each of the Debtors had separately filed a Chapter 13 petition for bankruptcy. At the § 341 (creditors meeting) hearing, the Debtors did not give meaningful information regarding their companies’ business transactions, stock valuation, and settlements. And, in their Chapter 13 Schedules, they each reported their RIL stock as having a $0 value and listed Barton’s conversion judgment as having a value of only $100,000 with a “[remainder] unliquidated; pending [the Superior Court] proceedings.” Neither Debtor filed amended schedules or an amended Plan that included the full value of the judgment after it was rendered.
Barton filed a proof of claim in each case and the Debtors objected. They argued that the claims should be mandatorily subordinated under § 510(b), which, they said, would render the claim unenfoi-ceable and subject to disallowance under ■§ 502(b)(1). The Debtors also filed separate actions for mandatory subordination and disallowance on the same grounds as those alleged in their objections. The bankruptcy court dismissed the separate actions after the parties litigated the claim objections to resolution because the same result would apply to those actions.
Barton had filed separate motions to convert each case to Chapter 7, arguing that the Debtors acted in bad faith, which was cause to convert under § 1307(c).
After a hearing, the bankruptcy court ruled on the Debtors’ claim objections based on subordination and disallowance and on Barton’s motions to convert. It held that Barton’s claims were not subject to subordination because they were not “for damages arising from the purchase or sale of ... a security.” § 510(b). Rather, the bankruptcy court determined that Barton’s claims were based upon the Superior Court judgment for fraud and conversion. The bankruptcy court did not specifically address the disallowance issue, but did dismiss the Debtors’ separate objections related to that issue. Finally, the court granted Barton’s motions to convert. As to each of the Debtors, it found that “the timing of the filing was intended to defeat the state court action ... [because] it was likely that there was going to be an award of damages that would have put these Debtors outside a Chapter 13.” It also found that the Debtors manipulated the bankruptcy process and concealed assets. The Debtors then appealed to the BAP.
The BAP affirmed the bankruptcy court’s subordination determination, but on different grounds. It determined that § 510(b) did not “apply in an individual debtor case.” Khan I, 523 B.R. at 183. The BAP also affirmed the bankruptcy court’s refusal to disallow Barton’s claims because they were not subject to subordination and, even if they were, “there [was] no basis for claims disallowance under § 502(b)(1).” Id. at 182. Lastly, the BAP held that the bankruptcy court did not abuse its discretion when it found bad faith and converted the cases from Chapter 13’ proceedings to Chapter 7 proceedings. Id. at 185-87. These appeals followed.
JURISDICTION AND STANDARDS OF REVIEW
We have jurisdiction pursuant to 28 U.S.C. § 158(d)(1).
“We review decisions of the BAP de novo.” Aalfs v. Wirum (In re Straightline Invs., Inc.), 525 F.3d 870, 876 (9th Cir. 2008). “This court independently reviews the bankruptcy court’s rulings on appeal from the BAP.” Miller v. Cardinale (In re *1063 DeVille), 361 F.3d 539, 547 (9th Cir. 2004). “ ‘Because we are in as good a position as the BAP to review bankruptcy court rulings, we independently examine the bankruptcy court’s decision, reviewing the bankruptcy court’s interpretation of the Bankruptcy Code de novo and its factual findings for clear error.’ ” Id. “[We] accept findings of fact made by the bankruptcy court unless [those] findings leave the definite and firm conviction that a mistake has been committed by the bankruptcy judge.” Aalfs, 525 F.3d at 876 (internal quotation marks omitted).
“We review for abuse of discretion the bankruptcy court’s ultimate decisions ... to convert [the cases] from Chapter 13 to Chapter 7.” Rosson v. Fitzgerald (In re Rosson), 545 F.3d 764, 771 (9th Cir. 2008). A court abuses its discretion when it makes “a factual finding that was illogical, implausible, or without support in inferences that may be drawn from the facts in the record.” United States v. Hinkson, 585 F.3d 1247, 1263 (9th Cir. 2009) (en banc). We “review the bankruptcy court’s finding of bad faith for clear error.” Leavitt v. Soto (In re Leavitt), 171 F.3d 1219, 1222-23 (9th Cir. 1999).
DISCUSSION
We will first consider the Debtors’ assertion that the bankruptcy court and the BAP erred when they determined that § 510(b) did not apply.[6] Thereafter, we will consider their argument that those courts should not have determined that the conversion of their proceedings from Chapter 13 to Chapter 7 was appropriate.
I. Subordination of Barton’s Claims
Section 510(b) requires that claims for damages “arising from the purchase or sale” of a “security of the debtor or of an affiliate of the debtor” shall be subordinated to certain other claims or interests.[7] As already noted, the bankruptcy court determined that the section did not apply because - Barton’s claims did not arise from the purchase or sale of a security. The BAP affirmed the bankruptcy court on the basis that the section did not apply because the Debtors were individuals. See Khan I, 523 B.R. at 183-84. However, after the BAP ruled, we held that § 510(b) does apply when debtors are individuals and in doing so we specifically disagreed with Khan I. See Liquidating Tr. Comm. of the Del Biaggio Liquidating Tr. v. Freeman (In re Del Biaggio), 834 F.3d 1003, 1010 (9th Cir. 2016). That effectively overturned the basis of the BAP’s decision, and we now make that explicit by rejecting the BAP’s contrary decision.
Nevertheless, we affirm the bankruptcy court’s decision on the basis stated by that court, that is, we agree that Barton’s claims did not arise out of a purchase or sale of securities. No doubt Barton did purchase securities in RIL in 2001 shortly after RIL was founded. Also, we assume *1064 that RIL is an affiliate of the Debtors.[8] However, Barton’s claims against the Debtors do not arise from his purchase of RIL securities. Rather, they are based upon the judgment entered against the Debtors by the Superior Court on account of their actions many years later (2009) when they fraudulently converted Barton’s stock.
Of course, we have given a broad interpretation to the “arising from”[9] language of the statute. For example, in Del Biaggio, we found a sufficient nexus to a purchase and sale where the claimant (Freeman) had been fraudulently induced by the individual debtor to invest in an affiliate of the debtor. We pointed out that “Freeman’s claim is really no claim at all but for his investment in [the affiliate].” Del Biaggio, 834 F.3d at 1009. In fact, Freeman’s claim was not for misrepresentations as such, but for the investment he made in “detrimental reliance on those misrepresentations.” Id. And what he sought “corresponded] exactly to the amount he invested.” Id.
The case at hand is quite different from Del Biaggio because here what Barton seeks has nothing to do with his investment, other than the fact that he had purchased the now-purloined securities many years earlier. And the damages he sought were not remotely related to the purchase; they were simply a judgment measured by the value of the converted property when the conversion took place.
We recognize that in other cases, where no actual purchase or sale had been consummated, we found that claims, nevertheless, arose from a purchase or sale transaction. See, e.g., Pensco Tr. Co. v. Tristar Esperanza Props., LLC (In re Tristar Esperanza Props., LLC), 782 F.3d 492, 496-97 (9th Cir. 2015) (the claim arose out of a failed agreement by the debtor to purchase claimant’s stock); Am. Broad. Sys., Inc. v. Nugent (In re Betacom of Phoenix, Inc.), 240 F.3d 823, 829-31 (9th Cir. 2001) (a merger fell through so no ultimate sale took place, but claim still arose from a sales transaction). While those cases do bespeak a broad interpretation of “arising from,” there is a limit to the reach of § 510(b), which stops short of encompassr ing every transaction that touches on or involves stock in a corporation. That is well explicated in Racusin v. Am. Wagering, Inc. (In re Am. Wagering, Inc.), 493 F.3d 1067 (9th Cir. 2007).
In Racusin, the claimant was promised that due to past services he would be paid, in part, with common stock of the company upon completion of a common offering or initial public offering. Id. at 1070. When the contract was breached, he sued the company and others for damages. Id. The district court determined that Racusin should receive shares of stock, and he appealed. Id. He did so on the basis that he did not want stock; he wanted damages. We agreed with him. Id. Thus, we “remanded the case to the district court to calculate the monetary value of the ... shares.” Id. The amount was determined, the debtors quickly filed for bankruptcy, Racusin filed a claim, and the debtors asserted that § 510(b) required subordination. Id. We disagreed. Id. at 1071. We pointed out that Racusin did not seek to be, and was not, a shareholder. Rather, the value of the stock was just the measuring stick for determining the “compensation owed for services he performed pursuant to a contract that the debtors breached.” Id. at 1073. Thus, he was a true creditor rather than an equity investor in a “now- *1065 bankrupt corporation.” Id.; see also In re Angeles Corp., 177 B.R. 920, 926 (Bankr. C.D. Cal. 1995) (debtor had committed bad acts after claimant’s purchase of securities was complete, and claims did not arise from the purchase), aff'd, 199 B.R. 220 (B.A.P. 9th Cir. 1996).
Here, Barton sought and obtained damages. Even though his damage award for conversion was based on the value of the securities at the time of conversion, his action did not arise out of the purchase of the securities and the risks that the purchase might entail. It arose out of the Debtors’ conversion of the securities many years later. The value of the securities at the date of conversion was the measuring stick.
Moreover, the oft-quoted rationales for the § 510(b) subordination requirement[10] do not apply here. Primarily, the separate wrongdoing of the Debtors had no connection to the purchase or sale of Barton’s shares of stock in RIL; nor did the judgments against the Debtors that form the basis for Barton’s bankruptcy claims arise from a purchase or sale. In any event, the risk that those who purchase or sell stock (investors in a corporation) assume and expect to take is not that the shares themselves will later be stolen outright by other individuals.[11] Nor, to the extent it applies at all, does the equity cushion rationale affect our decision here.[12] Even if the Debtors’ creditors did, somehow, rely upon the equity contributed by RIL’s investors, that does not touch upon- the separate torts committed by the Debtors in this case.
In short, the bankruptcy court did not err when it refused to subordinate Barton’s claims pursuant to § 510(b).
II. Conversion of Chapter 13 Proceedings to Chapter 7 Proceedings
The Debtors also assert that the bankruptcy court clearly erred when it found bad faith,[13] and abused its discretion [14] when it converted their Chapter 18 proceedings to Chapter 7 proceedings.[15] We disagree. The bankruptcy court was required to and did consider “the totality of the circumstances.” Eisen v. Curry (In re Eisen), 14 F.3d 469, 470 (9th Cir. 1994) (per curiam) (internal quotation marks omitted). However, the Debtors point to the factors we outlined in Leavitt, 171 F.3d at 1224. Those are:
(1) whether the debtor misrepresented facts in his petition or plan, unfairly manipulated the Bankruptcy Code, or otherwise filed his Chapter 13 petition or plan in an inequitable manner;
(2) the debtor’s history of filings and dismissals;
(3) whether the debtor only intended to defeat state court litigation; and
(4) whether egregious behavior is present.
Id. (citations, internal quotation marks, and brackets omitted). The bankruptcy court was well aware of those factors, and declared that the second factor did not cut against the Debtors. It did, however, find manipulation of the bankruptcy proceed *1066 ings (first factor) and interference with the state proceedings (third factor). Moreover, although it did not specifically mention the egregiousness of the Debtors’ behavior, it plainly thought that the behavior was quite troubling at the very least (fourth factor). The BAP agreed with the bankruptcy court’s analysis. See Khan I, 523 B.R. at 185-87.
The Debtors attack those determinations and concentrate a good deal of their firepower on Leavitt’s third factor. Leavitt, 171 F.3d at 1224; see also Chinichian v. Campolongo (In re Chinichian), 784 F.2d 1440, 1445 (9th Cir. 1986). They focus on the word “only” and take that to mean that defeating state court litigation had to be the sole motive, but we have not so treated it. For example, in Leavitt itself we decided that avoidance was merely the “primary” motive. Leavitt, 171 F.3d at 1225; see also Eisen, 14 F.3d at 470 (if only intent is to defeat state court litigation, that is bad faith); Chinichian, 784 F.2d at 1445 (multitude of factors' showed bad faith, including the real purpose of the filing). The Debtors do not appear to recognize that the factors are simply factors to consider and that not every one of them must be met. That rather blinds them to the overarching requirement that what matters is “the ‘totality of the circumstances.’ ” Eisen, 14 F.3d at 470; see also Ho v. Dowell (In re Ho), 274 B.R. 867, 877 (B.A.P. 9th Cir. 2002) (a court must decide “ ‘in the light of all militating factors’ ”). The BAP recognized that. See Khan I, 523 B.R. at 185. As the BAP put it: “Even if a debtor presents more than one purpose for filing, the third Leavitt factor does not fail to support cause if the other purpose also reflects bad faith. And, once again, the third factor is considered in a totality of the circumstances context.” Id. at 186.
We have carefully reviewed the record together with" decisions of the bankruptcy court and the BAP, and are satisfied that the evidence fully supports the determinations that there was bad faith and that conversion was appropriate. The highly suspect timing of the Debtors’ Chapter 13 petitions, their failure and refusal to provide financial information critical to the determination of the value of their assets, and their further failure to provide information regarding the movement of funds among their various business entities all combined to justify the conversion decision.
Thus, the bankruptcy court did not clearly err or abuse its discretion.
CONCLUSION
This case presents a saga of picaresque behavior. The Debtors converted Barton’s stock and were required by the Superior Court to pay substantial damages as a result. In the bankruptcy proceedings, their timing was at least suspicious, and they continued their inappropriate behavior by refusing to be forthcoming about the nature and activities of the business entities they controlled. On this record, the bankruptcy court properly determined that Barton’s claims should not be subordinated and that the Chapter 13 proceedings should be converted to Chapter 7 proceedings. We, therefore, affirm the bankruptcy court.[16]
AFFIRMED. Barton shall recover his costs on appeal.

. Khan v. Barton, (In re Khan) ("Khan I”), 523 B.R. 175, 178 (B.A.P. 9th Cir. 2014).

. Hereafter all references to section numbers are to sections of Title 11 of the United States Code, unless otherwise indicated.

. See § 1307(c).

. §§ 1301-1330.

. §§ 701-784,

. In light of our determination that § 510(b) does not apply, we need not consider the Debtors’ assertion that Barton’s claims should be disallowed because they were subordinated.

. More particularly, the section reads as follows:
For the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 on account of such a claim, shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock.

. The Debtors alleged that each owned over 20% of RIL. See § 101(2)(B) (defining "affiliate”).

. See § 510(b).

. See Betacom, 240 F.3d at 830 (dissimilar risks and equity cushion rationales).

. See id.; see also Del Biaggio, 834 F.3d at 1010-11.

. Betacom, 240 F.3d at 830; see also Del Biaggio, 834 F.3d at 1011-12.

. See Leavitt, 171 F.3d at 1222-23; de la Salle v. U.S. Bank, N.A. (In re de la Salle), 461 B.R. 593, 605 (B.A.P. 9th Cir. 2011).

. See Rosson, 545 F.3d at 771; see also Hinkson, 585 F.3d at 1263-64.

. See § 1307(c).

. Of course, in so doing we have rejected the reasoning of the BAP on the subordination issue.