**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>JAMES GREGORY BARRETT,<br>　　　　　Debtor. | BAP No. SC-25-1025-BFL<br><br>Bk. No. 24-04251-JBM13 |
| JAMES GREGORY BARRETT,<br>　　　　　Appellant. | **MEMORANDUM*** |

Appeal from the United States Bankruptcy Court
for the Southern District of California
J. Barrett Marum, Bankruptcy Judge, Presiding

Before: BRAND, FARIS, and LAFFERTY, Bankruptcy Judges.

## INTRODUCTION

Appellant James Gregory Barrett appeals from an order dismissing his chapter 13[1] case as a bad faith filing and imposing a two-year refiling bar. The bankruptcy court determined that James[2] filed his case in bad faith and that a two-year refiling bar was appropriate given his history of egregious behavior. Seeing no reversible error, we AFFIRM.

---

* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

[2] We refer to Mr. Barrett as James and Mrs. Barrett as Torri for ease of reference. No disrespect is intended.

## A.    History of bankruptcy filings and litigation between the parties

Since 2013, James and Torri have filed 10 separate chapter 13 cases, most of which were filed between 2021 and 2024 when they were facing eviction from their home. All cases, including this one, were dismissed before a chapter 13 plan was confirmed. The Barretts have also engaged in extensive litigation in the California state and federal district courts.

Central to the bankruptcy filings and the nonbankruptcy litigation has been the Barretts' (former) residence, located in Thermal, California, which they purchased in 2002 and still claim to own. In 2015, the Barretts obtained a loan for $33,740.88 from Salton Sea Estates III, LLC ("Salton") secured by a deed of trust in favor of Salton against the residence. The Barretts soon defaulted, and Salton started foreclosure proceedings and sued for quiet title and other claims in state court in 2017.

Salton foreclosed in 2018. After more litigation in 2019 and 2020, Salton filed its first unlawful detainer action against the Barretts in April 2021 ("Salton UD Case"). In August 2021, James filed an action against Salton for various claims, including wrongful foreclosure and quiet title ("James Case").

While the Salton UD Case and the James Case were pending, the Barretts began their tag-team bankruptcy filings and case removals. In James's fourth chapter 13 case, filed in August 2021, the bankruptcy court

---

[3] We exercise our discretion to take judicial notice of documents electronically filed in the bankruptcy court, where appropriate. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

granted relief from the automatic stay so the Salton UD Case and the James Case could be litigated in state court. James attempted to circumvent this order by removing those cases to the bankruptcy court. The bankruptcy court remanded the Salton UD Case and the James Case to the state court and dismissed James's fourth bankruptcy case as a bad faith filing.

The day after the district court affirmed the bankruptcy court's decision to remand the Salton UD Case and the James Case, James filed his fifth chapter 13 case and again removed the Salton UD Case and the James Case. The bankruptcy court (Judge Mann) issued an order to show cause ("OSC") why his fifth case should not be dismissed with prejudice and why the Salton UD Case and the James Case should not again be remanded. Judge Mann found that James's objective in his fifth chapter 13 case, as with his prior four bankruptcy filings, was to stall eviction from the residence and this case, like the others, had not been filed in good faith. Indeed, Judge Mann found that removing the Salton UD Case and the James Case immediately after the district court's affirmance of their remand was particularly egregious. After James failed to respond to the OSC or appear at the hearing, the bankruptcy court remanded the Salton UD Case and the James Case, dismissed James's fifth case as a bad faith filing, and ordered a bar to refiling for two years or until the Salton UD Case and the James Case were resolved, whichever was earlier.

Three days before James's fifth case was dismissed, Torri filed her first in a series of four chapter 13 cases. She removed (for the third time) the Salton

3

UD Case. The bankruptcy court (Judge Mann) issued an OSC for why Torri's case should not be dismissed with prejudice and why the Salton UD Case should not again be remanded. The court found that Torri, like James, had misrepresented her ownership in the residence since Salton foreclosed in 2018 and that the Barretts' actions and the timing of their bankruptcy filings indicated an intent to avoid the Salton UD Case and warranted imputing James's bad faith to Torri. Ultimately, the court did not dismiss Torri's first chapter 13 case, but it remanded the Salton UD Case on May 10, 2023. The next day, the state court entered a judgment and writ of possession in favor of Salton, and the Barretts were ejected from the residence on or around June 1, 2023. James's appeal of the judgment in the Salton UD Case was dismissed on June 6, 2023. Torri dismissed her first chapter 13 case on August 4, 2023.

Twenty days after voluntarily dismissing her first chapter 13 case, Torri filed her second chapter 13 case, which was eventually dismissed with a 180-day refiling bar. While her second case was pending, Torri filed an action against Salton in state court, (the "Forcible Detainer Action"), which she later removed to the bankruptcy court. In the Forcible Detainer Action, Torri sought to recover possession of the residence and damages, which was essentially the same relief James sought in the James Case, which the state court had just dismissed for his failure to post a $10,000 bond. Torri obtained a default against Salton, but the bankruptcy court denied a default judgment and instead remanded the Forcible Detainer Action. Torri obtained a default judgment against Salton in the Forcible Detainer Action from the state court

4

on May 31, 2024. Salton sought to stay enforcement of and set aside the "fraudulently obtained" default judgment on several grounds, including improper service. Salton was granted a stay, and the court set a hearing for July 2, 2024. The hearing ultimately did not proceed due to Torri's third bankruptcy filing.

Meanwhile, in June 2024, the Barretts broke into the residence, Torri filed her third chapter 13 case, and she again removed the Forcible Detainer Action, which had just been remanded two months prior. During her third case, Torri filed a motion to sell the residence. She argued that she and James owned the residence based on the claims process that occurred in her first bankruptcy case. In her first case, after the claims bar date had passed without Salton filing a proof of claim, Torri filed a proof of claim on Salton's behalf, claiming that she and James owned the residence subject to Salton's deed of trust for $20,845.46. Torri contended that, since no one objected to the proof of claim, the claim was "deemed allowed," and the subsequent dismissal of her case on August 4, 2023 conclusively established as a matter of law that she and James owned the residence subject to Salton's deed of trust. The bankruptcy court (Judge Latham) denied Torri's motion to sell, finding that she did not appear to own the residence. Torri's third case was dismissed, and the Forcible Detainer Action was again remanded.

In the meantime, Salton served a three-day notice to quit on the Barretts, who had been squatting at the residence since the June break-in. When they failed to vacate, Salton filed its second unlawful detainer action.

5

Before the trial could take place, Torri filed a "skeletal" fourth chapter 13 case. She then removed Salton's second unlawful detainer action to the bankruptcy court, claiming that she and James owned the residence. On the trustee's unopposed motion, Torri's fourth case was dismissed in December 2024 with a one-year refiling bar. James's instant bankruptcy filing also stayed the hearing set for Salton's refiled motion to set aside the default judgment in the Forcible Detainer Action.

## B.     The instant bankruptcy case

James filed his sixth chapter 13 case in the Eastern District of Oklahoma on October 22, 2024. Over his objection, it was transferred to the Southern District of California on November 8, 2024.

After determining that James had not violated Judge Mann's refiling bar because the Salton UD Case and the James Case were resolved before he filed the case, the bankruptcy court (Judge Marum) issued an OSC for why it should not dismiss the sixth case as a bad faith filing and impose at least a two-year refiling bar. While the Salton UD Case and the James Case had technically been resolved, the "issues" in those cases, namely ownership and possession of the residence, were still being challenged by the Barretts in Torri's Forcible Detainer Action.

In his response to the OSC, James argued that the claims process in Torri's first chapter 13 case, as well as the default judgment entered in the Forcible Detainer Action, finally and conclusively determined that the Barretts owned and had the right to possess the residence subject to Salton's

6

deed of trust. Thus, he argued, the "issues of ownership and possession" were resolved in their favor before he filed the sixth case and could not provide a basis for bad faith. James argued that selling the residence would allow him to fund a plan paying creditors in full, and that therefore he filed his case in good faith. James disputed that he was trying to defeat state court litigation with his sixth chapter 13 filing, because no civil cases pending at the time named him as a party. Lastly, James blamed the bankruptcy judges for their continued refusal to determine whether the residence was estate property as the reason for his and Torri's serial bankruptcy filings.

The chapter 13 trustee also responded to the OSC, arguing that James and Torri had demonstrated a long history of filings that served no bankruptcy purpose. In this case, the trustee argued, James was again seeking the protection of the automatic stay without fully complying with the Bankruptcy Code and while attempting to pervert the bankruptcy process through manipulative and misleading conduct, including repeatedly failing to comply with court orders and engaging in tactics to defeat state court litigation. The trustee argued that this case, like the previous one, should be dismissed as a bad faith filing with a two-year refiling bar.

After a hearing, the bankruptcy court dismissed James's sixth chapter 13 case with a two-year refiling bar. The court found that all four *Leavitt* factors were present, and based on the totality of the circumstances, including Judge Mann's findings in James's fifth case, it determined that James filed his sixth case in bad faith and that a two-year refiling bar was appropriate given

his history of egregious behavior. This timely appeal followed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court abuse its discretion in dismissing James's sixth chapter 13 case for bad faith and imposing a two-year refiling bar?

## STANDARDS OF REVIEW

A bankruptcy court's finding of bad faith is reviewed for clear error. *Khan v. Barton (In re Khan)*, 846 F.3d 1058, 1063 (9th Cir. 2017). Factual findings are clearly erroneous if they are illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010).

A bankruptcy court's decision to dismiss a case with prejudice and impose a filing bar is reviewed for abuse of discretion. *See Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1226 (9th Cir. 1999). A bankruptcy court abuses its discretion if it applies an incorrect legal standard, misapplies the correct legal standard, or makes factual findings that are illogical, implausible, or not supported by the record. *United States v. Hinkson*, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc).

## DISCUSSION

**A.    Governing law**

The dismissal order does not state what authority the bankruptcy court

relied upon to sua sponte dismiss the case. In any event, the bankruptcy court has the power to dismiss a chapter 13 case sua sponte under § 105(a). *Tennant v. Rojas (In re Tennant)*, 318 B.R. 860, 869 (9th Cir. BAP 2004) (holding that the bankruptcy court may sua sponte dismiss a chapter 13 case under §§ 1307 and 105(a)). James does not contest that he was given the required notice and opportunity to be heard before the case was dismissed. *See id.* at 870 (stating that, for a sua sponte dismissal, notice and an opportunity to be heard must be provided).

Bad faith is a "cause" for dismissal of a chapter 13 case under § 1307(c). *In re Leavitt*, 171 F.3d at 1224. Section 349(a) establishes a general rule that dismissal of a case is without prejudice, but it expressly grants a bankruptcy court the authority to dismiss a case with prejudice – i.e., a permanent bar to refiling. *Id.* at 1223-24.

To determine the existence of bad faith sufficient to order dismissal of a chapter 13 case with prejudice, the bankruptcy court must consider the totality of the circumstances. *Id.* at 1224. Factors to consider in determining the presence of bad faith include: (1) whether debtor misrepresented facts in the petition, unfairly manipulated the Bankruptcy Code, or otherwise filed the petition in an inequitable manner; (2) debtor's history of filings and dismissals; (3) whether debtor only intended to defeat state court litigation; and (4) the presence of egregious behavior. *Id.* The bankruptcy court need not find that every factor is satisfied. *In re Khan*, 846 F.3d at 1066. Rather, the *Leavitt* factors are "simply factors to consider[,]" and "what matters is the

totality of the circumstances." *Id.* (cleaned up). Filing a bankruptcy case to defeat or delay state court litigation, even if that is not the only purpose for the filing, constitutes bad faith. *See id.*; *Eisen v. Curry (In re Eisen)*, 14 F.3d 469, 470 (9th Cir. 1994); *see also In re Silberkraus*, 253 B.R. 890, 906 (Bankr. C.D. Cal. 2000) ("[T]wo party disputes in state court (or federal district court) should be resolved through the normal litigation process in those forums, and . . . it is bad faith to file bankruptcy instead of continuing with the normal litigation process in the nonbankruptcy forums."), *subsequently aff'd*, 336 F.3d 864 (9th Cir. 2003).

**B.    The bankruptcy court did not abuse its discretion in dismissing James's sixth chapter 13 case for bad faith and imposing a two-year refiling bar.**

Upon a thorough review of the *Leavitt* factors, the bankruptcy court found that each was present and that under the totality of the circumstances, all four weighed in favor of a bad faith filing. For the first factor, the court found that James had demonstrated an unfair manipulation of the Bankruptcy Code through his continuous case filings in a clear effort to stall his eviction from the residence. Although James had numerous opportunities to resolve this issue in state court, he instead used the Bankruptcy Code and its corresponding protections to hinder Salton's ability to exercise its state-law rights.

The court agreed with James's concession that he "is by definition a serial filer," and found that the sheer volume of filings without successful discharges adequately demonstrated the second *Leavitt* factor.

As to the third factor, the court found, consistent with Judge Mann's earlier finding, that James's repeated filings appeared overwhelmingly to be an effort to defeat state court litigation. James's assertion that he was not involved in any civil litigation when he filed his sixth case failed to account for his previous bankruptcy filings (and Torri's) which, the court found, were clear attempts to hinder Salton's ability to secure its legal rights to the residence. Indeed, noted the court, James's and Torri's most recent bankruptcy filings came immediately before a trial was set to begin in Salton's second unlawful detainer action.

Finally, the court found that James's conduct was egregious and satisfied the fourth factor. In addition to his pattern of repeated filings designed to hinder Salton, the court found that James had also attempted to evade Judge Mann's bar order by (1) dismissing the James Case and then filing the almost-identical Forcible Detainer Action through Torri, and (2) filing his sixth chapter 13 case in Oklahoma, where he had never resided and appeared never to intend to reside.

James lists nine issues on appeal that can be distilled to the following arguments: (1) the bankruptcy court erred by focusing only on the *Leavitt* factors and not considering the totality of the circumstances; (2) the bankruptcy court erred by not considering the "linchpin" issue of ownership of the residence and whether it was property of the estate as part of the bad faith analysis; (3) the bankruptcy court erred by failing to consider that the proposed plan would have paid creditors in full; and (4) the bankruptcy court

11

erred in its application of the *Leavitt* factors.

First, James argues that the bankruptcy court erred when it considered only the *Leavitt* factors in determining bad faith as opposed to the "totality of the circumstances." This argument is nonsensical. The *Leavitt* factors are tools the bankruptcy court uses in considering the totality of the circumstances, which the court did here. The court did not consider just one factor in a vacuum, but rather considered all militating factors and found that each of the *Leavitt* factors were present and weighed in favor of a bad faith filing. *See Ho v. Dowell (In re Ho)*, 274 B.R. 867, 876 (9th Cir. BAP 2002) ("A 'court must make its good-faith determination in light of *all* militating factors.'") (quoting *Goeb v. Heid (In re Goeb)*, 675 F.2d 1386, 1390 (9th Cir. 1982)). This was not error.

James argues that the bankruptcy court erred by not considering in its analysis the "militating factors" of ownership and possession of the residence. The court determined that the rightful owner of the residence was irrelevant for purposes of deciding whether the sixth case was filed in bad faith, and that the state court was better suited to decide ownership. While possibly not "irrelevant," we agree that these issues were not necessary for the court to find that this was a bad faith filing given the mountain of other factors indicating bad faith.

Nonetheless, James continues to argue that ownership and possession of the residence were finally determined in his and Torri's favor in at least two ways prior to when he filed his sixth case. Both James and Torri have

repeatedly argued that they own the residence based on the claims process that occurred in Torri's first bankruptcy case. In her third case, Torri moved to sell the residence and in doing so argued that, because the proof of claim she filed for Salton was "deemed allowed" and her case was dismissed, this conclusively established as a matter of law that she and James owned the residence subject to Salton's deed of trust.

Assuming James and Torri are not precluded from raising this issue, their argument is just legally wrong. James relies on *Siegel v. Federal Home Loan Mortgage Corp.*, 143 F.3d 525 (9th Cir. 1998), to argue that the deemed-allowed claim Torri filed for Salton in her first case finally determined ownership of the residence in the Barretts' favor and must be given res judicata, or claim preclusive, effect. In *Siegel*, the Ninth Circuit Court of Appeals held that the deemed allowance of a proof of claim under § 502(a) is a final judgment entitled to preclusive effect in future proceedings, even if no actual order regarding the claim has been entered. 143 F.3d at 530-31.

James's reliance on *Siegel* is misplaced because it is distinguishable on its facts. First, *Siegel* was filed as a no-asset chapter 7 case. A chapter 13 case, by definition, has assets. Second, the debtor in *Siegel* had received a discharge, which the Circuit panel found important as to any "lingering doubts" about the claim's finality. *Id.* at 530. Here, there was no confirmed plan or discharge. This Panel declined to apply *Siegel's* holding in a case similar to this one, where the chapter 13 debtors voluntarily dismissed their case without confirmation of a plan or a discharge. *See Inv. Consultants, Inc. v.*

13

*Ramirez Ramirez (In re Ramirez Ramirez)*, BAP No. CC-19-1257-STaF, 2020 WL 4436263, at \*8 (9th Cir. BAP Aug. 3, 2020). In *Ramirez Ramirez*, the creditor filed a proof of claim in the debtors' earlier chapter 13 cases, which the debtors did not object to, but the cases were dismissed prior to plan confirmation. In the debtors' subsequent chapter 13 case, the creditor filed another proof of claim and argued that, under *Siegel*, the debtors were barred from challenging the claim because it was deemed allowed in the prior cases and entitled to preclusive effect. *Id.* at \*7. The Panel disagreed, distinguishing *Siegel* on its facts and determining that a "deemed allowed" proof of claim in a chapter 13 case that has been dismissed without confirmation of a plan and without entry of the debtor's discharge is not entitled to claim preclusive effect in later litigation. *Id.* at \*8 (citing *Fisher v. Santry (In re Santry)*, 481 B.R. 824, 830 (Bankr. N.D. Ga. 2012)).

James's "claims process" argument additionally fails because the allowance or disallowance of a claim does not determine ownership of property. Parties file proofs of claim in order to assert "claims." § 501(a). A "claim" is a "right to payment" or a "right to an equitable remedy [that] gives rise to a right to payment . . . ." § 101(5). The allowance of a claim is a determination that the claimant has a right to payment; it does not determine that the claimant or anyone else has ownership of any asset. Rather, to obtain a determination as to ownership rights, one must commence an adversary proceeding. *See* Rule 7001(b). A party cannot request a determination of ownership rights by objecting to a claim, rather than by filing an adversary

14

proceeding. Rule 3007(b). "[I]t is error for a bankruptcy court to determine property interests outside of an adversary proceeding." *In re Ramirez Ramirez*, 2020 WL 4436263, at *6 (citing cases). Thus, allowance of the proof of claim that the Barretts filed on behalf of Salton could not and did not determine that the Barretts own the residence.[4]

James also argues that the issues of ownership and possession of the residence were determined in Torri's favor in the default judgment the state court awarded her against Salton in the Forcible Detainer Action on May 31, 2024. Salton has disputed this. First, Salton sold the residence in November 2023 but ultimately bought it back from the buyer on June 10, 2024. Salton argued that, because it did not own the residence at the time of the default judgment, and the buyer was not a party to the Forcible Detainer Action, Torri could not have gained possession of the residence from either the buyer or Salton, which was not in possession. Further, Salton immediately challenged the default judgment as fraudulent, but the Barretts' continued bankruptcy filings and case removals prevented the state court from deciding that challenge.

Next, James argues that the bankruptcy court should have considered his proposed chapter 13 plan, which he argues established good faith because it provided for the sale of the residence and would have paid creditors in full. As noted above, the residence is not his to sell. But even if it was, his

---

[4] While, under certain circumstances, failure to proceed by adversary proceeding can be harmless error, those circumstances are not present here. *See Ruvacalba v. Munoz (In re Munoz)*, 287 B.R. 546, 551 (9th Cir. BAP 2002).

15

argument fails. The bankruptcy court is not required to "evaluate confirmability of a debtor's proposed chapter 13 plan when determining whether § 1307(c) cause exists." *Khan v. Barton (In re Khan)*, 523 B.R. 175, 186 (9th Cir. BAP 2014), *aff'd but criticized on other grounds*, 846 F.3d 1058 (9th Cir. 2017), *and abrogated in part by Liquidating Tr. Comm. v. Freeman (In re Del Biaggio)*, 834 F.3d 1003 (9th Cir. 2016). Here, the plan did not propose to pay any amount to Salton even though James acknowledges, at minimum, that Salton has a security interest in the residence. Since the plan did not provide for James's largest creditor, it does not suggest good faith. *See id.*

Finally, James argues that the bankruptcy court erred in its application of the *Leavitt* factors, essentially arguing that its findings are erroneous and not supported by the record. We disagree. It is clear that the Barretts intended to hinder Salton's nonbankruptcy remedies by systematically invoking the automatic stay through the filing of well-timed, serial petitions. Even more egregious, they have engaged in a "tag-team" system of filing separate petitions to further exploit the automatic stay and circumvent adverse state court rulings. Their pattern of petition filings and removals of pending state court actions are merely efforts to delay those actions, avoid adverse rulings, and hinder Salton's ability to secure and enforce its property rights. As the bankruptcy court found, their most recent petitions came just before a trial was set to begin in Salton's second unlawful detainer action. When James, who claims to have a J.D., faced the hurdle of being declared a vexatious litigant by the state court and subject to a prefiling order, he manipulated the

16

system by using Torri as a proxy to file actions similar to those that were dismissed and seek essentially the same relief. It is farcical for James to argue that he was not trying to defeat state court litigation with his sixth bankruptcy filing because no civil cases pending at the time named him as a party.

The Barretts have used the bankruptcy system as a means to further their litigation position in what is nothing more than a two-party dispute, lacking any desire or ability to reorganize, that has consumed precious judicial resources in both the state and federal courts. Their multiple, sometimes skeletal, chapter 13 filings have had no bankruptcy purpose, and their repeated failure to appear when facing dismissal demonstrates their irreverence for the bankruptcy court. For James to argue that the record does not support the bankruptcy court's decision to dismiss this case as a bad faith filing with prejudice is ludicrous. The record amply supports its decision.

James does not contest the bankruptcy court's decision to impose the two-year refiling bar. This is a sufficient basis to affirm that decision. *See United States v. Kama*, 394 F.3d 1236, 1238 (9th Cir. 2005) ("Generally, an issue is waived when the appellant does not specifically and distinctly argue the issue in his or her opening brief."). In any event, a two-year refiling bar in this case was appropriate and not an abuse of discretion. *See Kulick v. Leisure Vill. Ass'n, Inc. (In re Kulick)*, BAP No. CC-22-1114-FTL, 2022 WL 17848939, at *3 (9th Cir. BAP Dec. 16, 2022) ("[T]he issue of the length of the bar is a matter for the [bankruptcy] [c]ourt's discretion.") (quoting *In re Craighead*, 377 B.R.

648, 657 (Bankr. N.D. Cal. 2007)).

## CONCLUSION

For the reasons set forth above, we AFFIRM.