
**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>STEPHEN SCOTT LOKAN and<br>BRENDA LEIGH LOKAN,<br>　　　　　Debtors. | BAP No. OR-22-1249-CLB<br><br>Bk. No. 6:20-bk-62593-TMR |
| VANESA PANCIC, Chapter 7 Trustee,<br>　　　　　Appellant,<br>v.<br>STEPHEN SCOTT LOKAN; BRENDA<br>LEIGH LOKAN,<br>　　　　　Appellees. | **MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the District of Oregon
Thomas M. Renn, Chief Bankruptcy Judge, Presiding

Before: CORBIT, LAFFERTY, and BRAND, Bankruptcy Judges.

## INTRODUCTION

Chapter 7[1] trustee and appellant Vanesa Pancic, seeks to overturn the

bankruptcy court's determination that debtors Stephen and Brenda Lokan[2]

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

[2] For ease of reference we refer to Mr. Lokan as Stephen and Mrs. Lokan as

converted their chapter 13 bankruptcy case to a chapter 7 in good faith. Because the bankruptcy court did not err, we AFFIRM.

## FACTS

### A. Chapter 13 filing

The Lokans filed a chapter 13 bankruptcy petition on November 23, 2020, with the goal of preserving their business, a convenience store and deli in Oakridge, Oregon, and equity in real property. Unsecured creditors filed proofs of claim totaling approximately $100,000. The Lokans' chapter 13 plan, which required monthly payments of $150.00, was confirmed on March 24, 2021.

### B. Inheritance

On November 9, 2021, more than 11 months after the Lokans filed their bankruptcy petition, Stephen's brother died intestate. Stephen and his sister were the only two intestate heirs. Additionally, Stephen was the sole beneficiary of his brother's accounts. Stephen received approximately $395,000 in funds[3] directly from his brother's savings and retirement accounts. Stephen knew that he was the sole beneficiary of his brother's accounts at least a month before his brother died.

In December 2021, with help of probate counsel, Stephen opened a probate case to administer his brother's estate. Through probate, Stephen

---

Brenda. No disrespect is intended.

[3] Stephen received checks for some of the funds in December 2021 and the remainder no later than February 1, 2022.

also inherited a fifty-percent ownership interest in real property located in Vida, Oregon valued at $500,000.

## C.     Conversion from chapter 13 to chapter 7

On February 9, 2022, the Lokans disclosed the inheritance to their bankruptcy attorney; on March 18, 2022, the Lokans' attorney filed a motion to convert the Lokans' chapter 13 case to a chapter 7. The bankruptcy court granted the motion on March 21, 2022.

The Lokans filed their conversion schedules on April 1, 2022. The Lokans referenced the inheritance on schedule A/B stating, that "Debtor 1 is beneficiary of his brother's estate (Not property of the estate, Debtor's brother passed on 11/9/2021, more than 180-days after the date of the peittion) [sic]." The asset was listed as having an "unknown" value.

On April 25, 2022, at the § 341 meeting of creditors, in response to the chapter 7 trustee's inquiry as to why they chose to convert to chapter 7, the Lokans' responded that they converted the case on advice of counsel. Later, in the stipulated pre-trial order, the Lokans also identified a decrease in revenue from their business and a desire to retire as reasons for conversion. According to the Lokans, by "converting the case to chapter 7 and excluding the inheritance from property of their Bankruptcy Estate, Debtors would have sufficient means to close their store and retire, given their investments in the business and land on their own are not likely to provide Debtors with the means to retire."

## D. Chapter 7 trustee's motion

After the chapter 7 trustee realized that the Lokans had funds from the inheritance sufficient to fully pay all unsecured creditors, the trustee filed a motion seeking an order of the bankruptcy court that the inheritance remained property of the Lokans' bankruptcy estate even after the case was converted to a chapter 7. The trustee also sought turnover of the inheritance pursuant to § 521(a)(4).

In the motion, the trustee pointed out that pursuant to § 1306(a)(1), Stephen's inheritance was necessarily property of the Lokans' chapter 13 bankruptcy estate as of the date of conversion even though Stephen's brother died more than 180 days after the date on which the Lokans filed their bankruptcy petition. Nevertheless, the trustee conceded that if the Lokans' conversion to chapter 7 was in good faith, then pursuant to § 348(f)(1)(a), the inheritance would not be property of the converted bankruptcy estate because it was acquired after the Lokans' original petition date. But, the trustee argued, because the Lokans converted in bad faith, § 348(f)(2), not § 348(f)(1), controlled. Under § 348(f)(2), property of the bankruptcy estate in the converted case consists of property as of the date of conversion, not as of the petition date, and therefore include the inheritance.

The trustee argued that the Lokans' conversion was in bad faith because they unfairly manipulated the Bankruptcy Code and had engaged in egregious behavior by failing to turnover their tax return as required

4

under the terms of their chapter 13 plan, failing to timely inform the chapter 13 trustee of the inheritance, and attempting to remove the inheritance from the bankruptcy estate by converting to a chapter 7 to the detriment of creditors. The Lokans opposed the motion.

### E. Denial of trustee's motion

The bankruptcy court held an evidentiary hearing on the trustee's motion and thereafter issued an oral ruling denying the trustee's motion.

The bankruptcy court explained that it must look at the totality of circumstances and consider the four factors laid out in *Leavitt v. Soto* (*In re Leavitt*), 171 F.3d 1219, 1224 (9th Cir. 1999) ("*Leavitt* factors") to determine whether the Lokans converted in bad faith.

The bankruptcy court agreed with the trustee that there were "a number of situations where [the Lokans] were not being transparent." Specifically, the court found that the Lokans (1) should have "informed the trustee earlier" of the inheritance, (2) should have "amended their schedules and more clearly described the rights to the bank accounts and the inherited funds," and (3) should not have "simply ignored the tax refund."

Despite its concerns, the bankruptcy court found that "the debtors provided [the court] with a sufficient explanation for how they handled [the inheritance]," and "that the debtors did not act in bad faith." The bankruptcy court found important the fact that the Lokans did not hide the inheritance; rather they informed their bankruptcy attorney of it before the

5

motion to convert was filed. According to the bankruptcy court, any failure to disclose after that was "on the attorney's shoulders rather than the debtors." Additionally, the court found that the inheritance was disclosed in the conversion schedules and the trustee had the opportunity to inquire at the first meeting of creditors. Moreover, the bankruptcy court dismissed the trustee's allegation that the Lokans' reasons for converting were evidence of manipulating the bankruptcy system by reminding the parties that § 1307(a) "gave the debtors the absolute right to convert their case at any time."

Because the bankruptcy court found that the Lokans converted to chapter 7 in good faith, the court denied the trustee's motion for turnover of the inheritance.

The oral ruling was followed by a written order entered on December 19, 2022. The trustee timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (E). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court err in finding that the Lokans converted in good faith?

## STANDARDS OF REVIEW

We review the bankruptcy court's legal conclusions, including its interpretation of provisions of the Bankruptcy Code, de novo. *Dale v.*

*Maney* (*In re Dale)*, 505 B.R. 8, 10 (9th Cir. BAP 2014). We review the bankruptcy court's factual findings regarding debtors' lack of good faith for clear error. *Ellsworth v Lifescape Med. Assoc.* (*In re Ellsworth)*, 455 B.R. 904, 914 (9th Cir. BAP 2011).

## DISCUSSION

### A. Conversion and the bankruptcy estate

Debtors are accorded an absolute right to convert a chapter 13 case to a chapter 7 case at any time. Section 1307(a) states "[t]he debtor may convert a case under this chapter to a case under chapter 7 of this title at any time. Any waiver of the right to convert under this subsection is unenforceable." *See Harris v. Viegelahn*, 575 U.S. 510, 514, (2015) ("Congress accorded debtors a nonwaivable right to convert a Chapter 13 case to one under Chapter 7 'at any time.'") (citing § 1307(a)). Importantly, conversion does not commence a new bankruptcy case, nor does conversion "effect a change in the date of filing the petition." § 348(a).

The parties do not dispute that the inheritance was an asset of the chapter 13 bankruptcy estate. § 1306(a)(1). The dispositive question is whether the inheritance remained an asset of the bankruptcy estate upon the Lokans' conversion to chapter 7.

### 1. Scope of the bankruptcy estate after a good faith conversion

Bankruptcy Code § 348(f)(1)(A)[4] describes the scope of property of the estate in a case converted in good faith from chapter 13 to chapter 7. Section 348(f)(1)(A) states, "property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion." In other words, under § 348(f)(1)(A), if the debtor owns an item of property on the chapter 13 petition date and retains it on the date of conversion to chapter 7, the property becomes part of the converted chapter 7 estate and is subject to administration by the chapter 7 trustee. *Harris*, 575 U.S. at 517 ("§ 348(f) limits a converted Chapter 7 estate to property belonging to the debtor[s] 'as of the date' the original Chapter 13 petition was filed."). But absent a bad faith conversion, property that the debtor acquires between the petition date and the conversion date is not

---

[4] The Third Circuit in *Bobroff v. Cont'l Bank* (*In re Bobroff*), 766 F.2d 797 (3d Cir.1985) (collecting cases) found that the legislative history of § 348(f) demonstrated that it was added for the purpose of encouraging repayment plans instead of liquidation. The *Bobroff* court explained:

> If debtors must take the risk that property acquired during the course of an attempt at repayment will have to be liquidated for the benefit of creditors if chapter 13 proves unavailing, the incentive to give chapter 13—which must be voluntary—a try will be greatly diminished. Conversely, when chapter 13 does prove unavailing no reason of policy suggests itself why the creditors should not be put back in precisely the same position as they would have been had the debtor never sought to repay his debts.

*In re Bobroff*, 766 F.2d at 803 (quotation marks omitted).

property of the converted chapter 7 estate. *See id.* at 517-18 (analyzing exclusion of postpetition wages from the estate); § 348(f)(1)-(2).

Thus, according to § 348(f)(1)(A), if the Lokans converted in good faith, the property in their converted case would not include the inheritance because it only includes the Lokans' property as of the date they filed their chapter 13 petition. § 348(f)(1)(A); *Harris*, 575 U.S. at 517.

### 2. Scope of the bankruptcy estate upon a bad faith conversion

If the Lokans converted to their chapter 7 case in bad faith, however, then pursuant to § 348(f)(2), the inheritance remained property of the bankruptcy estate in the converted case. This is because where the conversion is in bad faith, the relevant date for determining what assets are included is the date of the Lokans' conversion, not the date of filing the original petition. § 348(f)(2).[5]

## B. Determining bad faith when converting from chapter 13 to chapter 7

Neither good faith nor bad faith is defined in the Bankruptcy Code. Accordingly, after considering the totality of the circumstances, courts must determine on a case-by-case basis, whether a debtor converted in bad faith. *In re Leavitt*, 171 F.3d at 1224 (citing cases). As part of the analysis, the

---

[5] "If the debtor coverts a case under chapter 13 of this title to a case under another chapter of this title in bad faith, the property of the estate in the converted case shall consist of the property of the estate as of the date of conversion." § 348(f)(2).

Ninth Circuit instructs courts to consider the following four *Leavitt* factors when determining whether a debtor acted in bad faith:

> (1) whether the debtor misrepresented facts in his petition or plan, unfairly manipulated the Bankruptcy Code, or otherwise filed his Chapter 13 petition or plan in an inequitable manner;
> (2) the debtor's history of filings and dismissals;
> (3) whether the debtor only intended to defeat state court litigation; and
> (4) whether egregious behavior is present.

*Id.* (cleaned up); *Ho v. Dowell* (*In re Ho)*, 274 B.R. 867, 876 (9th Cir. BAP 2002). No one factor is determinative. A finding of bad faith does not require fraudulent intent by the debtor, nor is evidence required of the debtor's ill will directed at creditors, or that the "debtor was affirmatively attempting to violate the law – malfeasance is not a prerequisite to bad faith." *In re Leavitt*, 171 F.3d at 1224-25. "The *Leavitt* factors are simply tools that the bankruptcy court employs in considering the totality of the circumstances." *Khan v. Barton* (*In re Khan*), 523 B.R. 175, 185 (9th Cir. BAP 2014).[6]

---

[6] Bad faith is analyzed in a variety of bankruptcy contexts including voluntary conversion (as in this case), involuntary conversion, (as was the case in *In re Khan*), voluntary and involuntary dismissal (*In re Ellsworth*, 455 B.R. at 917-18), and plan proposal (*Nelson v. Burchard* (*In re Nelson*), 334 F. App'x 65 (9th Cir. 2009). Yet, regardless of context, most courts apply the *Leavitt* factors when determining the existence of bad faith.

## C. Lokans' good faith

In this case, the bankruptcy court applied the correct legal standard; it analyzed bad faith by looking at the totality of circumstances and considered the *Leavitt* factors. On appeal, the trustee acknowledges that only the first and fourth *Leavitt* factors are at issue, that is, whether the debtors misrepresented facts or unfairly manipulated the Bankruptcy Code, and whether the debtors engaged in egregious behavior.

Misrepresentation and unfair manipulation of the Code have been found when a debtor's dishonesty pervades the bankruptcy proceedings, such as when a debtor fails to fully disclose assets and financial dealings and fails to correct disclosure or offer an explanation for his conduct. *See In re Leavitt*, 171 F.3d at 1225; *In re Tomlin*, 105 F.3d 933, 941 (4th Cir. 1997).

Similarly, egregious conduct has been found where debtor's conduct demonstrates a blatant disregard for bankruptcy process, such as refusing to fully and accurately disclose financial affairs, concealing information from the court, violating injunctions, and obstructing the trustee in his duties. *See In re Leavitt*, 171 F.3d at 1225; *In re Tomlin*, 105 F.3d at 936-37; *Jones v. Avery (In re Jones)*, CC-15-1211-KuDTa, 2016 WL 1704742, at *10 (9th Cir. BAP Apr. 25, 2016); *Yan Sui v. Marshack (In re Yan Sui)*, CC-12-1223-KiPaD, 2013 WL 1397416, at *8 (9th Cir. BAP Apr. 4, 2013), *aff'd*, 582 F. App'x 739 (9th Cir. 2014); *In re Chabot*, 411 B.R. 685, 705 (Bankr. D. Mont. 2009).

11

After reviewing the two applicable *Leavitt* factors, and considering the totality of the circumstances, the bankruptcy court found insufficient evidence of bad faith. On appeal, the trustee argues that the bankruptcy court failed to give sufficient weight to the undisputed facts she argues demonstrated the Lokans' bad faith. We disagree.

The bankruptcy court found the Lokans' explanation as to the delay in disclosing the inheritance was sufficient to allay any of its concerns. Because the trustee did not include the transcript of the evidentiary hearing as part of the record before the court, we do not know precisely the reasoning given by the Lokans for their delay. However, the record demonstrates that the Lokans (1) disclosed the inheritance (albeit delayed) to their bankruptcy attorney prior to conversion, (2) listed the inheritance in their conversion schedules, and (3) answered the trustee's questions about the inheritance at the post-conversion meeting of creditors. Therefore, based on the record, we cannot find that the bankruptcy court's factual finding that "the debtors provided [the court] with a sufficient explanation for how they handled" the inheritance was illogical, implausible, or without support.

Additionally, the bankruptcy court correctly noted that, pursuant to § 1307(a), the Lokans had an absolute statutory right to convert their case to a chapter 7 regardless of their rationale for the conversion. Accordingly, the bankruptcy court properly refused to impute bad faith to the reasons given by the Lokans for wanting to convert (such as wanting to retire). The

12

trustee's disagreement with the bankruptcy court's consideration of those factors does not make the bankruptcy court's findings illogical, implausible, or without support in the record.

In short, the bankruptcy court's finding that the Lokans did not act in bad faith in converting their chapter 13 case to a chapter 7 case is supported by the record. Therefore, the bankruptcy court correctly denied the trustee's motion.

## CONCLUSION

Because the bankruptcy did not err, we AFFIRM.