NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JAN 21 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ANGELINA BOWEN DELGADO; ROBIN BECERRA; STEVE BOZAN; DIANA BROWN; JEAN CIGILIANO; DORIS CLINE; MIKE CONLIN; KEVIN DESHON; JUANITA DICKERSON; SYLVIA DOMINGUEZ; RICHARD ESTRADA; JAMIE FELIX; MARIA FERNANDEZ; CORINNA FUENTES; RAUL FUENTES; RAMONA GALINDO; CATHLEEN GARCIA; AMBER GORDON; LENA GRIFFITH; LISA GUARDADO; LARRY GUERRERO; MARIE GUERRERO; CHARLES HACKETT; BOBBY HAMMONDS; SANDRA HURTADO; MERWYN JONES; JAMES LO GRANDE; RONALD LINARES; WILLIAM LISENBERY; RITAMARIE LISENBERY-ATENCIO; ANTHONY LUERA; ROBERT MARQUEZ; WAYNE MAUDER; JAMES MEEKER; VINCENT MORALES; JOHN R. ORTIZ; JACK OWENS; EDNA PALUMBO BOBADILLA; STEVEN PALUMBO; CHRISTOPHER PONCE; ANDRIA REUTMANN; CHRISTA SVORINICH; JOHN SUKEENA; ALBERT TORRES; DANIELLE TORRES; SIDNI TORRES; VIRGINIA UMANA; JOSEPH URSICH; CRISTIAN VASQUEZ; | No. 24-1845

D.C. No.
2:18-cv-05539-CBM-E

MEMORANDUM* |

---

     *     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

DEANNA WIGLE; GINA WU,

        Plaintiffs - Appellants,

 v.

ILWU-PMA WELFARE PLAN, an
employee health and welfare plan under the
Employee Retirement Income Security Act,

        Defendant - Appellee.

Appeal from the United States District Court
for the Central District of California
Consuelo B. Marshall, District Judge, Presiding

Argued and Submitted November 20, 2025
Pasadena, California

Before: WARDLAW, N.R. SMITH, and MILLER, Circuit Judges.
Dissent by Judge N.R. SMITH.

Plaintiffs are participants in the ILWU-PMA Welfare Benefit Plan, a multiemployer benefit plan subject to the Employee Retirement Income Security Act of 1974 (ERISA). Each plaintiff received treatment at the Advanced Pain Treatment Medical Center (APTMC), a surgical clinic in San Pedro, California. They brought claims against the Plan for unpaid benefits under 29 U.S.C. § 1132, alleging that the Plan improperly denied claims for "facility fees" at APTMC because it determined that APTMC is not a "hospital" eligible to charge such fees under the Plan's terms.

Plaintiffs appeal the district court's grant of judgment to the Plan based on the court's determination that the Plan's trustees did not abuse their discretion in denying plaintiffs' claims. We have jurisdiction under 28 U.S.C. § 1291, and we reverse.

"We review de novo a district court's choice and application of the standard of review to decisions by fiduciaries in ERISA cases." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 962 (9th Cir. 2006) (en banc). "We review for clear error the underlying findings of fact." *Id.*

1. The district court correctly reviewed the trustees' determination for abuse of discretion. When an ERISA plan confers "discretionary authority as a matter of contractual agreement," the district court reviews the exercise of that authority for abuse of discretion, *Abatie*, 458 F.3d at 963, with procedural irregularities being a "matter to be weighed" in that analysis, *id.* at 972–73. Plaintiffs do not explain how any procedural irregularities in this case "prevented the administrative record from being fully developed or prevented . . . a court from knowing all relevant facts," such that the district court should have altered its standard of review. *O'Rourke v. Northern Cal. Elec. Workers Pension Plan*, 934 F.3d 993, 1000 (9th Cir. 2019). And even if they did, the district court allowed the parties to submit additional evidence, considered those submissions, and concluded that it would reach the same result reviewing de novo. Plaintiffs also do not identify any conflict of

interest on the part of the Plan's trustees that would require modifying the standard of review. *See Anderson v. Suburban Teamsters of N. Ill. Pension Fund Bd. of Trs.*, 588 F.3d 641, 648 (9th Cir. 2009).

2. The district court erred in concluding that APTMC is not a hospital. The Plan defines the term "hospital" to include "a licensed non-Medicare approved ambulatory surgical facility" that (1) "is operated primarily for the purpose of performing surgical procedures on an outpatient basis," (2) "has a doctor and registered nurse in attendance when a patient is present," and (3) "is not an office maintained by a physician for the general practice of medicine." The Plan does not define the term "ambulatory surgical facility" or identify the type of license that a non-Medicare approved facility must possess.

In interpreting the Plan, we "first look to explicit language of the agreement," interpreting disputed terms "in an ordinary and popular sense." *Gilliam v. Nevada Power Co.*, 488 F.3d 1189, 1194 (9th Cir. 2007) (quoting *Richardson v. Pension Plan of Bethlehem Steel Corp.*, 112 F.3d 982, 985 (9th Cir. 1997)). Plan trustees abuse their discretion when they "'construe provisions of [a] plan in a way that clearly conflicts with the plain language' of the Plan." *Tapley v. Locals 302 & 612 of the Int'l Union of Operating Eng'rs–Emps. Constr. Indus. Ret. Plan*, 728 F.3d 1134, 1140 (9th Cir. 2013) (alteration in original) (quoting

*Johnson v. Trustees of W. Conf. of Teamsters Pension Tr. Fund*, 879 F.2d 651, 654 (9th Cir. 1989)).

California no longer has a licensing system for physician-owned surgical clinics; instead, the Medical Board of California requires such clinics to be accredited by an approved accreditation agency. *See* Cal. Health & Safety Code §§ 1248.1(g), 1248.15; *Capen v. Shewry*, 65 Cal. Rptr. 3d 890, 902 (Ct. App. 2007). APTMC is accredited to perform outpatient surgery by an accreditor approved by the Medical Board. We do not understand the Plan to argue that APTMC fails to qualify as a "licensed" facility solely because it lacks a license that California no longer issues.

The Plan Trustees denied the plaintiffs' claims for varying reasons. Some plaintiffs were told that "the place of service reported is incorrect," while others were told that "the billing provider does not hold a valid license or accreditation," and still others were informed that their claims were denied because APTMC "does not hold a certification as an Ambulatory Surgical Center." The claimants elected to have their claims arbitrated collectively. Before the arbitrator, the Trustees took the position that APTMC could not charge a facility fee because it "is not an Ambulatory Surgery Center (ASC) as defined in the Plan." The arbitrator denied all of the plaintiffs' claims on the ground that APTMC is not a "hospital," and the district court agreed that APTMC is not a licensed ambulatory

surgical facility because its accreditor classifies it as an "office-based surgery/procedure center" rather than an "ambulatory surgery center."

APTMC's accreditor distinguishes between office-based surgery centers and ambulatory surgery centers, based on the number of physicians and operating rooms, "mainly for survey scoping purposes." Undisputed record evidence shows that this distinction has no significance in California law and does not affect the applicable accreditation standards. Neither category mirrors the exact term used in the Plan. Even under the abuse-of-discretion standard, it was error to define the term "ambulatory surgical facility" solely by reference to a seemingly arbitrary distinction in the accreditor's classification system.

Before the arbitrator, the Trustees took the position that APTMC is not "operated primarily for the purpose of performing surgical procedures" and is instead an office maintained "for the general practice of medicine." The district court did not enter findings as to whether APTMC satisfies these elements of the Plan's definition of "hospital." The district court also did not consider how, if at all, the September 2015 summary of material modifications addressing Plan coverage at ambulatory surgery centers may affect some of the plaintiffs' claims.

Although we are ultimately reviewing the Plan's decision, and we may affirm "on any ground fairly supported by the record," *In re Leavitt*, 171 F.3d 1219, 1223 (9th Cir. 1999), "[w]hether, as a prudential matter, we should do so

depends on the adequacy of the record and whether the issues are purely legal," *Golden Nugget, Inc. v. American Stock Exch., Inc.*, 828 F.2d 586, 590 (9th Cir. 1987) (per curiam). Assessing whether the Plan abused its discretion in determining that APTMC is not "operated primarily for the purpose of performing surgical procedures" or that APTMC is an office maintained for "the general practice of medicine" will require close review of the extensive record, a task that we generally entrust in the first instance to the district court. *See Planned Parenthood of Greater Wash. & N. Idaho v. U.S. Dep't of Health & Hum. Servs.*, 946 F.3d 1100, 1111 (9th Cir. 2020). Expressing no opinion on any of those issues, we vacate the judgment and remand to the district court for further proceedings. *See* Fed. R. Civ. P. 52(a).

The parties shall bear their own costs.

**VACATED and REMANDED.**

*Delgado, et al., v. ILWU-PMA Welfare Plan*, No. 24-1845 (Pasadena – November 20, 2025)

N.R. Smith, Senior Circuit Judge, dissenting:

The majority correctly determines that an abuse of discretion standard of review governs this case, and that (1) there are no sufficient procedural irregularities to alter the standard of review; and (2) no conflicts of interests on part of the Plan's Trustees require modifying the standard of review.

However, after correctly proclaiming an abuse of discretion standard, the majority then fails to properly apply that standard to the Trustee's denial of benefits in this 29 U.S.C. § 1132 action. In the context of § 1132, "[w]e equate the abuse of discretion standard with 'arbitrary and capricious' review." *Tapley v. Locs. 302 & 612 of Int'l Union of Operating Eng'rs-Emps. Const. Indus. Ret. Plan*, 728 F.3d 1134, 1139 (9th Cir. 2013) (citation omitted). "Under this standard, the Trustees' interpretation of Plan language is entitled to a high level of deference and will not be disturbed unless it is not 'grounded on *any* reasonable basis.'" *Id.* (citation omitted and emphasis in original). To make this determination, "we consider whether application of a correct legal standard was '(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record.'" *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 676 (9th

1

Cir. 2011) (quoting *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

Instead of applying this standard, the majority too narrowly focuses on how the district court interpreted the Plan. The majority holds that it was an error for the district court to "define the term 'ambulatory surgical facility' solely by reference to a seemingly arbitrary distinction in the accreditor's classification system," and that remand is appropriate because the district court "did not enter findings as to . . . the other elements of the Plan's definition of 'hospital.'" Mem. Disposition at 5. But we review de novo the *Trustee's determination* for abuse of discretion, not whether the district court improperly interpreted the Plan.[1]

With the correct framework in mind, we ask whether it was an abuse of discretion for the Trustees to deny the claimants "facility fees" at the Advanced Pain Treatment Medical Center (APTMC) based on their determination that APTMC was not a "hospital" eligible to charge such fees. Under the Plan, the term "hospital" contains four elements: (1) "a licensed non-Medicare approved ambulatory surgical facility;" (2) "operated primarily for the purpose of

---

[1] Our colleague in the district court makes a similar error as my colleagues in the majority. The district court seemingly reviews de novo the decision put forth by the Arbitrator, rather than reviewing de novo whether the *Trustees* abused their discretion based on the available evidence.

performing surgical procedures on an outpatient basis;" (3) that has "a doctor and registered nurse in attendance when a patient is present;" and (4) "is not an office maintained by a physician for the general practice of medicine or dentistry." We may affirm the Trustees' determination "on any ground fairly supported by the record." *In re Leavitt*, 171 F.3d 1219, 1223 (9th Cir. 1999).

Applying this standard, we should have found that the Trustees did not abuse their discretion in denying the "facility fees" claims based on the first, second, and fourth elements of the term "hospital" under the Plan.

As to the first element, the majority holds that the Trustees' abused their discretion by construing the first element "'in a way that clearly conflicts with the plain language' of the Plan" based upon its own interpretation of the term "ambulatory surgical facility." *See* Mem. Disposition at 4–5 (quoting *Tapley*, 728 F.3d at 1140). However, the Plan provides no definition as to what an "ambulatory surgical facility" is, thus leaving it to the Trustees' discretion to determine its meaning. The Plan grants the Trustees "sole and exclusive power and discretion to construe, and apply the terms of the Agreement and to decide all issues of fact arising thereunder." "By giving the plan administrator 'full and final' authority, and vesting such authority 'exclusively' in the administrator, this policy clearly gave to the plan administrator the power to decide according to its own judgment."

3

*See Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 965 (9th Cir. 2006). "[W]e have repeatedly held that similar plan wording—granting the power to interpret plan terms and to make final benefits determinations—confers discretion on the plan administrator." *Id.* at 963.

The evidence in the record shows that the Trustees properly acted within their discretion in determining that APTMC was not a "licensed non-Medicare approved ambulatory surgical facility." First, APTMC is accredited by the Accreditation Association of Ambulatory Health Care Inc. ("AAAHC") as an "Office-Based Surgery/Procedure Center," not as an "Ambulatory Surgical Facility." Second, during the period when the California Department of Health Services licensed ambulatory surgical facilities while the Plan was in effect, from 2000 to 2007, it never licensed APTMC as such. And finally, it is undisputed that ATPMC does not meet the Medicare standards for being licensed as an ambulatory surgical facility. Given this evidence, the Plan's complete lack of instruction as to what constitutes an "ambulatory surgical facility," and an abuse of discretion standard for making this determination on appeal, the majority cannot show how the Trustee's determination "clearly conflicts with the plain language" of the Plan. *Tapley*, 728 F.3d at 1140 (citation omitted).

4

As to both the second and fourth elements, the record supports the Trustee's determination, that APTMC was not "operated primarily" for performing surgeries on an outpatient basis, and that APTMC is an office maintained for Dr. Ghadimi's general practice of medicine. The record clearly shows that: Dr. Ghadimi billed Plan members for services performed in an office setting at APTMC; Dr. Ghadimi signed a statement that his "pre-op" room is used to "see patients;" and claimants sought reimbursement for hundreds of office visits.

Given this evidence, the Trustee's determination that APTMC is not a "hospital" is not "illogical" or "implausible," but is supported by "inferences that may be drawn from the facts in the record.'" *Salomaa*, 642 F.3d at 676; *Simkins v. NevadaCare, Inc.*, 229 F.3d 729, 735 (9th Cir. 2000) ("[W]e should not artificially create ambiguity where none exists. If a reasonable interpretation favors the insurer . . . no compulsion exists to torture or twist the language of the policy." (citation and quotation marks omitted)). The evidence confirms that the Trustees did not abuse their discretion in determining that APTMC did not qualify as a "hospital." Thus, remand is not required when "a complete understanding of the issues may be had [from the record] without the aid of separate findings." *In re Leavitt*, 171 F.3d at 1223 (alteration in original) (citation omitted).